OPINION OF THE COURT
Chief Judge Cooke.
The question here is whether certain former high-ranking officials of the Village of Laurel Hollow are entitled to reimbursement from the village of their costs, disbursements and legal fees incurred in asserting a successful defense to a civil rights action brought against them as a result of acts performed in their official capacities. Reversing Special Term, the Appellate Division held that in the absence of express authority to employ counsel, plaintiffs were not entitled to recover legal fees from the village. There should be an affirmance. Without the benefit of authorizing legislation, reimbursement by the village of these expenses would constitute a gift of public funds for a purely private purpose, a matter expressly forbidden by our Constitution (NY Const, art VIII, § 1).
The present action finds its genesis in a long-standing conflict between the village and two of its residents, Erwine and Estelle Laverne. In 1954, this court affirmed an order of the Appellate Division which enjoined the Lavernes from using their property, located in a residential zone, for commercial purposes (Incorporated Vil. of Laurel Hollow v Laverne Originals, 307 NY 784, affg 283 App Div 795). Matters proceeded peacefully until 1962, when, pursuant to the authority of the village zoning ordinance, plaintiffs, the former Mayor, trustees, building inspector and a police officer of the village, conducted three warrantless searches of the Laverne home to *351 ascertain whether there were zoning violations on the premises. Judgments imposing both civil and criminal penalties against the Lavernes were subsequently reversed on the ground that the warrantless searches were unconstitutional (Incorporated Vil. of Laurel Hollow v Laverne Originals, 17 NY2d 900; People v Laverne, 14 NY2d 304).
Some years later, the Lavernes instituted a Federal civil rights action (US Code, tit 42, §§ 1981-1983) against plaintiffs, all of whom had, by this time, discontinued their relationship with the village. The complaint in that action alleged that plaintiffs, while acting under color of State law in their official capacities as officers and officials of the village, had violated the constitutional rights of the Lavernes by unlawfully entering their home and conducting illegal searches and seizures upon entry (see Bivens v Six Unknown Fed. Narcotics Agents, 403 US 388). The village was not joined as a party in the Federal action, since under then-existing precedent it was not amenable to suit (see Monroe v Pape, 365 US 167).
Although the reason does not appear on the record, plaintiffs were initially represented by the Nassau County Attorney, presumably at county expense. However, immediately after the Federal District Court granted the Lavernes summary judgment on the issue of liability (Laverne v Corning, 316 F Supp 629), plaintiffs dismissed the Nassau County Attorney and, on their own initiative, privately retained a prestigious Wall Street law firm as counsel. Throughout the pendency of the Federal action, plaintiffs kept the village apprised of their intention to hold it responsible for the cost of their defense. When the representation of substituted counsel ultimately led to final dismissal of the Laverne action (Laverne v Corning, 376 F Supp 836, affd 522 F2d 1144), plaintiffs instituted this action to recover from the village the legal fees, costs and disbursements they had incurred following their dismissal of the Nassau County Attorney.
Plaintiffs do not quarrel with the proposition that, in the absence of extraordinary circumstances not present here, a municipality may not be compelled to compensate for services rendered by an attorney unless his retainer is authorized by statute or appropriate resolution of the governing body (e.g., Cahn v Town of Huntington, 29 NY2d 451, 454-455; Seif v City of Long Beach, 286 NY 382, 386-387; Lyddy v Long Is. City, 104 NY 218, 222-223; 10 McQuillin, Municipal Corporations, § 29.11). The rationale underlying this rule — to guard against *352 extravagance and collusion on the part of public officials — is aptly illustrated by the circumstances here. Dissatisfied with their representation by the Nassau County Attorney, plaintiffs summarily dismissed him and retained one of the more esteemed and, as this record bears out, costly, New York law firms. This, of course, they had every right to do. But this does not mean that the village must underwrite the consequences of plaintiffs’ choice. Were this construction to be adopted, it would enable all public officials to employ counsel whenever it is deemed desirable and, thus, unilaterally empower them to create municipal debt. Allowing these plaintiffs reimbursement would result in a drastic departure from the safeguards erected about the disposition of public funds and would invite invasions of the public fisc for purely personal benefit. Having chosen to forsake the representation gratuitously provided them, plaintiffs may not now seek public funds to alleviate the cost of that selection (see People ex rel. Van Keuren v Board of Town Auditors of Town of Esopus, 74 NY 310, 313-314).
Indeed, as a practical matter, here there is not even involved a question of entitlement to payment to an attorney who has rendered service to a municipality but who had not been retained in accordance with statute. Rather, these plaintiffs were sued personally for their actions in office and their attorneys performed no services for the village. This case, therefore, does not concern whether plaintiffs’ law firm is entitled to its fees, but rather who is responsible for their payment. There is no question that if plaintiffs’ law firm had sued the village for fees for services rendered on behalf of plaintiffs, recovery would be denied (Seif v City of Long Beach, supra). This result may not be altered by the simple expedient of substituting plaintiffs as a party for the law firm (see Leo v Barnett, 41 NY2d 879, affg 48 AD2d 463, 464).
Plaintiffs admit that their attorneys were never retained by the village. Instead, they seek to assert some obscure common-law right to reimbursement based upon a novel theory of agency. This argument proceeds on the premise that in conducting the searches, plaintiffs were acting as mere agents for the village, their principal. Since agents are entitled to be indemnified for any damages they suffer as a result of following the directions of their principal, the village must assume plaintiffs’ attorney’s fees. There is, however, a major practical difficulty in accepting this argument. With the exception of Meehan, plaintiffs simply were not low-level officials executing *353 facially valid directions of their superiors. Rather, they were the very people in whom the decision to search the Láveme home was vested and, thus, are more properly characterized as principals (see Village Law, §§ 3-301, 4-400). Indeed, the underpinnings of the Federal action were not grounded on plaintiffs following the orders of a superior, but on the implementation of a policy over which they alone had control (cf. Restatement, Agency 2d, § 14 C). Hence, there is no principal involved to whom the plaintiffs may look for reimbursement.
On an even more fundamental level, any payment by the village to plaintiffs for their previously incurred costs would run afoul of the constitutional prohibition against gifts of public funds to assist a purely private purpose (NY Const, art VIII, § 1). Well settled is the proposition that a municipality may expend its funds only to meet its lawful obligations incurred as a result of the performance of its governmental functions (Union Free School Dist. v Town of Rye, 280 NY 469, 474). Conversely, a governmental entity may not compensate a person who performs an act which the government had no duty to undertake (Matter of Guarino v Anderson, 259 NY 93, 95-96).
One of the risks traditionally associated with the assumption of public office is that of defending oneself against charges of misconduct at one’s own expense (Matter of Chapman v City of New York, 168 NY 80, 85-86)[1] The public owes no duty to defend or even aid in the defense of such a charge. As was said in Matter of Chapman (supra, at p 86): "Whoever lives in a country governed by law assumes the risk of having to defend himself without aid from the public, against even unjust attempts to enforce the law, the same as he assumes the burden of taxation * * * Asking for aid to pay the expenses of a defense already made from one’s own resources, is like asking for aid in the payment of taxes or the discharge of any public burden. It is not a city or county purpose, but a *354 mere gift” (see, also, Leo v Barnett, supra; Buckley v City of New York, 289 NY 742, affg 264 App Div 116; Matter of Guarino v Anderson, supra; Matter of Kilroe v Craig, 238 NY 628, affg 208 App Div 93; 17 Opns St Comp, 1961, p 125; 12 Opns St Comp, 1956, p 479).
This is not to question the power of the municipality to enact an ordinance empowering it to defend its officials who in the future may be charged with violating the law in the performance of their duties. Such a considered policy decision would raise no constitutional objections, for the cost of the defense would simply be considered additional remuneration (Matter of Guarino v Anderson, supra, at pp 95-96; Matter of Deuel v Gaynor, 141 App Div 630, 631-632). But plaintiffs point to no statute or ordinance empowering the village, in the discretion of its governing body, to assume the responsibility of their defense. Rather, they seek an order declaring that the village must reimburse them for expenses previously incurred — expenses which vindicated their interests alone. It is precisely this result which our Constitution prohibits.
In short, the simple fact is that the dispute in the Federal action was a purely private one between plaintiffs, in their individual capacities, and the Lavernes. The pecuniary or proprietary interests of the village were in no way implicated. As the village had no connection with the suit, no obligation, either legal or moral, arose on its part to make good the expenses plaintiffs had incurred. A municipality, and by extension the public, is under no obligation to reimburse its officers for legal expenses incurred in defense of allegations of misconduct in office. In these circumstances, there can be no reimbursement from the municipality for expenditures incurred in serving a purely private purpose.[2]
*355 Accordingly, the order of the Appellate Division should be affirmed, with costs.

. The dissenters’ concerns notwithstanding, history has proven that the constitutional prohibition against reimbursing public officials for costs incurred in defending actions brought against them in their official capacities has yet to produce a dearth of candidates on the ballot year after year. Moreover, it is quite difficult to perceive how granting public officials such as plaintiffs the right to recover their expenses, but not attorney’s fees (which are a substantially larger item of expense), in situations such as this will ameliorate the concern of the dissenters. Indeed, as this litigation bears out, plaintiffs did not act effectively in enforcing the law; in fact, they violated the very laws they were sworn to enforce (People v Laverne, supra; Incorporated Vil. of Laurel Hollow v Laverne Originals, supra).

. The dissent’s reliance on former subdivision 11 of section 89 of the Village Law is misplaced (dissenting opn, at p 362). That statute authorized the board of trustees of a village to employ an attorney "to perform any special service for the village” (emphasis supplied). As such, it simply codified the common-law rule that, except in extraordinary circumstances not present here, an attorney may not be compensated with public funds unless his employment is authorized by the governing body of the municipality (Cahn v Town of Huntington, 29 NY2d 451, supra; Seif v City of Long Beach, 286 NY 382, supra). Moreover, the statute authorizes retention only when the attorney will "perform any special service for the village.” Here, plaintiffs retained the law firm not to protect any interest of the village, but to defend plaintiffs in their personal capacities. Since the law firm, and for that matter the County Attorney, performed no .service for the village, the statute is inapposite.
Inapposite, too, is section 1102 of the County Government Law of Nassau County. There is no indication in the record that the village board of trustees requested that *355 the County Attorney provide representation to plaintiffs. More important, the record is absolutely devoid of any indication of what the terms of that representation were to be. It may very well have been that the village would be responsible for those costs. Equally reasonable is the assumption that the county would provide representation, including costs and disbursements, at no charge. Or it is possible that plaintiffs themselves agreed to underwrite this cost. The point is that we are left with only surmise and conjecture of the terms of that representation. To conclude, as does the dissent, that the village was to pay the expenses of the County Attorney is tantamount to this court making new findings of fact — a function clearly beyond our power (CPLR 5501, subd [b]).
Given the inappropriateness of the above assumptions, the conclusion of the dissent must fall. Since there is no evidence that the village agreed to pay the costs and disbursements of the County Attorney, it is impossible to imply an agreement on its part to pay those costs billed by the law firm substituted in its place. This is especially so in view of the fact that the record is devoid of any indication that either the County Attorney or his successor was retained in accordance with statute or by resolution of the village board of trustees (Seif v City of Long Beach, supra).
Finally, the dissenters avoid what is the real issue in this case, viz., the constitutional prohibition against gifts of public funds for a private purpose (NY Const, art VIII, § 1). As noted, so long as the interests of the village were not implicated by the Laverne action and in the absence of a statute authorizing the village to provide plaintiffs a defense, the Constitution prohibits it from reimbursing plaintiffs for any expenses incurred in defending themselves in their personal capacities (e.g., Matter of Chapman v City of New York, 168 NY 80, supra).