■ Margaret Beare, Plaintiff, v William J. Byrne, Defendant and Third-Party Plaintiff-Appellant-Respondent, et al., Defendant. Orange County, Third-Party Defendant-Respondent-Appellant. (And a Fourth-Party Action.) — Appeal by the defendant third-party plaintiff from so much of an order of the Supreme Court, Orange County (Coppola, J.), entered May 2, 1983, as denied that branch of his motion which sought partial summary judgment in his favor on the issue of liability in the third-party action and the third-party defendant cross-appeals from so much of the same order as denied its cross motion for summary judgment. ¶ Order modified, on the law, by deleting that part of the order denying the branch of the defendant third-party plaintiff's motion which sought partial summary judgment on the issue of liability in the third-party action and substituting therefor a provision granting that branch of the motion. As so modified, order affirmed insofar as appealed from, with costs to the defendant third-party plaintiff. ¶ William J. Byrne, the defendant third-party plaintiff (hereinafter Byrne) was chairman of the Orange County Human Rights Commission (hereinafter the commission). He was also a teacher at the Orange County Community College (hereinafter the college). In 1975, Byrne was part of a hiring committee that hired the plaintiff in the prime action, Margaret Beare, as a teacher in his department in the college. Beare is a Canadian citizen. ¶ On December 7, 1977, Byrne wrote a letter to the chairman of his department. The letter was written on paper bearing the commission's letterhead. It expressed Byrne's concern that the college's retention of Beare would be in violation of affirmative action laws because, as an alien, Beare was depriving qualified Americans of a job. Byrne stated that, in his capacity as chairman of the commission, he had made several inquiries and had done some research and had found that Beare could only be retained if she had "exceptional ability" in the sciences or arts. He believed that she did not possess such attributes. ¶ The letter was submitted to the commission on February 1, 1978. The commission then conducted a formal investigation. After the college ignored the commission's request to not retain Beare, the commission publicized the situation in a public report and criticized the college's affirmative action program. An article on the report was written up in a local newspaper and Beare and Byrne were interviewed. Byrne repeated that he did not believe that Beare met the "exceptional ability" requirement of the immigration laws. ¶ Beare sued Byrne for defamation. She stated that he abused his powers as chairman of the commission and was seeking her removal solely so that he could make more money teaching extra courses. In 1982, after much pretrial litigation, summary judgment was granted to Byrne in the main action, and Beare's complaint was dismissed. The court's decision stated that all acts after February 1, 1978 "were undeniably within the scope of authority granted by the [commission]", and thus Byrne was protected by an

absolute immunity. The court also ruled that there was a question of fact as to whether or not the acts of Byrne prior to February 1, 1978 as described in his letter of December 7, 1977 were within the scope of his authority. Nevertheless, the complaint was dismissed because the court found that the statements made by Byrne were not defamatory as a matter of law. ¶ After Beare commenced the main action against him, Byrne requested that Orange County (hereinafter the county) provide him with representation. The County Attorney agreed that Byrne was a public official and normally entitled to the county's representation. However, he claimed that under the circumstances Byrne was not entitled to representation by the county because Beare's complaint alleged that Byrne acted outside the scope of his authority. Byrne subsequently obtained private counsel and instituted a third-party action against the county for reimbursement of his legal fees and costs. He based his complaint on sections 409 and 501 of the County Law which require the county to provide for an official's defense if the action against him is based upon acts performed in his official capacity. He also based the complaint on Local Law No. 13 of 1980 of Orange County which was enacted "to provide legal and financial protection for [county officers or employees who had civil suits] brought against them in their individual capacities for actions taken while in the performance of their official duties and responsibilities". ¶ Both sides moved, *inter alia,* for summary judgment stating that there were no issues of fact. The county claimed that the allegations of Beare's complaint were controlling as to whether or not Byrne acted within the scope of his authority for purposes of representation. Byrne stated that Special Term previously found that he was acting in his official capacity after February 1, 1978. As for the actions indicated in the letter of December 7, 1977, Byrne presented numerous letters and affidavits of commission members, as well as minutes of commission meetings. The evidence indicated that even if Byrne had acted without the commission's formal authority before February 1, 1978, the commission subsequently adopted Byrne's actions as those of the commission. It referred to Byrne's actions as its own in letters and in meetings, and on June 30, 1978, it formally resolved to ratify all of Byrne's actions which concerned Beare. The Supreme Court, Orange County (Coppola, J.), denied both requests for summary judgment stating that there were triable issues of fact, and the parties have cross-appealed. ¶ We modify so as to grant that branch of Byrne's motion as sought partial summary judgment in his favor on the issue of liability in the third-party action. Both parties agree that Byrne, as chairman of the commission, is normally entitled to county representation. They further agree that if he was not acting within his official capacity he was not entitled to representation. The county argument that the allegations of Beare's complaint control the determination of this issue is without merit. ¶ It is illogical to determine that the duty to defend and indemnify a defendant in a civil action rests upon the whims of a plaintiff in the drawing of a complaint. A determination as to whether the alleged act upon which a suit is based actually occurred within the scope of the official's duties should be an objective one based on the actual facts of the case (see 1982 Opns St Comp 82-243; 1980 Opns St Comp 80-688). ¶ The county's reliance on *Corning v Village of Laurel Hollow* (48 NY2d 348) for support of the proposition that reimbursement of officials for the costs of their defense is unconstitutional is misguided. In *Corning* the officials dismissed the county attorney and wished to be reimbursed for their private counsel. There was also no statute or ordinance empowering the municipality to assume the responsibility for the officials' defense. In the case at bar, Byrne was entitled to representation through sections 409 and 501 of the County Law and Local Law No. 13 of 1980 of Orange County. Also, he did not dismiss the county attorney, but only resorted

to a private attorney after the county refused to provide him with representation. Byrne was clearly entitled to representation by the county if he was acting in his official capacity. ¶ Viewing Byrne's actions objectively there can be no question that he was acting in his official capacity. Justice Coppola found that Byrne's actions after February 1, 1978 were undeniably within Byrne's official capacity. Upon reviewing the evidence as presented in the papers supporting the respective applications for summary judgment, the evidence is overwhelmingly in favor of Byrne that his actions prior to February 1, 1978 were within his official capacity. The letter of December 7, 1977 was written on the commission's letterhead and was signed by Byrne as chairman. There is no question that there was statutory authority for his actions (see General Municipal Law, § 239-r, subd [e]). Although Byrne may have initially acted without formal authority of the commission, there can be no doubt, as was evidenced by the commission's letter, minutes, affidavits and resolutions that it formally adopted and ratified Byrne's actions. ¶ To rebut this evidence, the county merely presented Beare's allegations in her complaint that Byrne's actions had a personal motive. The allegations were conclusory and speculative and were totally insufficient to rebut Byrne's evidentiary proof (see *Zuckerman v City of New York,* 49 NY2d 557; *Baly v Chrysler Credit Corp.,* 94 AD2d 781; *Behar v Ordover,* 92 AD2d 557). Mollen, P. J., Gibbons, Weinstein and Rubin, JJ., concur.