OPINION OF THE COURT
Gerard E. Delaney, J.
This is a dual-pronged application brought by the Putnam County Legislature through its Chairman, Honorable Kevin L. Wright, which presumptively seeks CPLR article 78 relief in the nature of mandamus (cf. CPLR 7803 [1]) which would direct that respondent, Commissioner of Finance, John Duffy, pay a certain bill submitted for services by the law firm of McCarthy, Fingar, Donovan, Drazen and Smith to the Putnam County Legislature in the amount of $9,893.40; by the second such application, petitioner, Legislature, seeks a declaration under both State and local law that the Legislature of the County of Putnam has the authority to obtain any such legal or other professional and technical advice it deems necessary in its sole discretion and judgment.
It is apparent that prior to any determination on the issue of mandamus, the court must necessarily determine by way of declaratory judgment whether the Putnam County Legislature *520 had the authority to contract for such services. Accordingly, petitioner’s second application is, therefore, converted under the provisions of CPLR 103 (c) to an action for declaratory judgment and the pleadings in the instant special proceeding are deemed converted to the pleadings in such action and the court proceeds on such basis to declare the rights of the parties with respect to the matter in controversy, especially inasmuch as the facts in question are not disputed.
The Putnam County Legislature (petitioner) is the duly elected legislative body of the County of Putnam and acts under the authority of the County Law of the State of New York with all such powers as delineated therein as reserved to the Board of Supervisors. (County Law § 278; cf. County Law § 150-a.)
On May 23, 1984, the County Legislature was notified by the County Executive, respondent David D. Bruen, that approximately $813,000 in County funds were invested with the Lion Capital Group by the local Department of Finance and that the Lion Capital Group had filed for reorganization under the bankruptcy laws on May 2,1984. The Lion Capital Group was not one of the depositories designated by the Putnam County Legislature for the deposit of moneys received by the Commissioner of Finance pursuant to Putnam County Charter § 2.04 (n).
The Legislature, upon such notification, conducted certain hearings during which it heard from the Commissioner of Finance, the Deputy Commissioner of Finance, the County Executive, the County Attorney and others. At the conclusion of such hearings, the Legislature adopted Resolution No. R-112 on June 7, 1984, wherein it was resolved, inter alla, “that the Putnam County Legislature authorizes the hiring of an independent legal advisor as afore-described and that the expenditure for this purpose shall not, until further consideration, exceed $10,000.00 and that the funds for this purpose shall be paid out of the consultant line of the Legislature’s budget * * * and be it further resolved, that the Putnam County Attorney request an extension of time to answer the petition filed against Putnam County by Bradford Trust Company in this matter.”
The Legislature by Resolution No. R-115 dated June 20,1984, “resolved that this Legislature hereby hires independent counsel of McCarthy, Fingar, Drazen, Donovan and Smith of White Plains, New York, as authorized by Resolution R-112.”
Certain services were performed by the law firm and a report issued by the law firm to petitioner dated July 2,1984, followed by a billing by McCarthy, Fingar, Donovan, Drazen and Smith dated July 3, 1984, to the Putnam County Legislature in the *521 amount of $9,893.40 for expenses and services rendered. The Chairman of the Putnam County Legislature, Kevin L. Wright, approved such invoice for payment, which was further audited and approved by the County Auditor on November 1, 1984.
Upon receipt of the bill submitted by McCarthy, Fingar, Donovan, Drazen and Smith to the Legislature, respondent, Commissioner of Finance, John Duffy, acting pursuant to the direction of the County Executive, respondent, David D. Bruen, refused to pay the bill for services.
Under Putnam County Charter (Charter) § 8.01 (cf. County Law § 500 [2]) “the County Attorney is appointed by the County Executive, subject to the confirmation by the County Legislature. The County Attorney may be removed by the County Executive subject to a two-thirds vote of concurrence by the County Legislature.”
The County Attorney is an “appointive officer” of the County. (County Law § 400 [4] [a]; cf. Des Pres v Niagara County Bd. of Supervisors, 37 Misc 2d 1087; Matter of Knauf v County Legislature of County of Monroe, 53 Misc 2d 917, appeal dismissed 28 AD2d 643.)
In law the County Attorney is “the legal advisor to the [Legislature] and every officer whose compensation is paid from county funds in all matters involving an official act of a civil nature. The county attorney shall prosecute and defend all civil actions and proceedings brought by or against the county, the board of supervisors and any officer whose compensation is paid from county funds for any official act”. (County Law § 501 [1]; see also, Putnam County Charter § 8.02 [a]-[c].)
The powers and duty of the Putnam County Legislature are spelled out in Putnam County Charter § 2.04, which states, inter alla, that the Legislature “shall have and exercise all the legislative powers and duties now or hereafter conferred or imposed upon it by this charter * * * by state law, together with all the powers and duties necessarily implied or incidental thereto. The County Legislature shall have, but not by limitation, the following powers and duties * * * (i) to make or cause to be made studies, audits and investigations as it deems to be in the best interest of the County, and in connection therewith, to obtain professional and technical advice, appoint temporary advisory boards of citizens, subpoena witnesses, administer oaths and require the production of bonds, papers and other evidence deemed necessary.”
It is the position of the Legislature that charter § 2.04 (i) sets forth the implicit power to hire outside counsel in that it is *522 further alleged that the “County Executive has failed to distinguish between the Legislature hiring outside counsel to represent the County and the Legislature hiring outside counsel to advise the Legislature in the performance of its duties, especially in a situation where the Legislature believes that the County Attorney may be in a conflict of interest situation.” Indeed, the County Attorney had advised the Legislature, when queried by the Legislature as to the wisdom and legality of the investments made, that the Commissioner of Finance, pursuant to Putnam County Charter § 4.02 (a) had authority to invest County funds on a continuing basis and that such investments were, therefore, appropriate under General Municipal Law § 11. All parties agree that members of the County Legislature differed on the opinion of the County Attorney as to the legality of such investments. (See, affidavit of Thomas J. Costello, County Attorney of the County of Putnam, Mar. 21, 1985, and the affidavit of Kevin L. Wright, Chairman of the Putnam County Legislature, Mar. 5, 1985, at 2.) It was apparently after such disagreement that “the Legislature also wanted independent professional and technical advise as to the County’s position relative to the other creditors of Lion Capital Group in the bankruptcy proceeding.” (Wright affidavit, at 2.)
Mr. Costello secured the advice of special counsel, the firm of Anderson, Russell, Kill and Olick as to the wisdom of asserting a counterclaim or defense on behalf of the County of “ultra vires” action on the part of the Putnam County representatives who made the original investment decision. Mr. Costello also conferred with the law firm of McGuire and Tiernan who represented the Byram Hills School District in the bankruptcy proceedings.
In passing its Resolution No. 112, the Legislature stated, inter alla, that it required “the assistance of independent legal advice from a qualified expert in the law of bankruptcy practice, securities regulations and/or municipal finance, in order to evaluate its position in this matter”.
At a regular meeting of the Legislature held on July 3, 1984, Resolution No. 130 was introduced wherein the Legislature resolved “that the Department of Law under the direction of the County Attorney, is hereby directed to defend the pending litigation against the County of Putnam asserting, in addition to other appropriate defenses, that there was no authority for the County to enter into such investments and that there was no authority for Bradford Trust Company to receive the funds of the County of Putnam in the manner in which they did”. Such *523 resolution was not voted on at that time, however, a special meeting of the Legislature was held on July 24, 1984, wherein the original Resolution No. R-130 was split and came into four separate Resolutions Nos. 136 through 139, which were passed by such Legislature. Resolution No. 136 was similar to that portion of proposed Resolution No. 130 cited above and directed the County Attorney to defend the litigation, asserting in substance the defense of ultra vires actions on the part of the County; Resolution No. 137 directed the County Attorney to initiate legal action against National Money Market Services; Resolution No. 138 directed the County Attorney to commence legal action against Lion Capital Group for the unauthorized sale of securities to the County of Putnam and finally, Resolution No. 139 directed the County Attorney to commence legal action “against any bonding company or indemnitor which may cover the County of Putnam against willful or negligent actions or omissions of any County official or employee arising out of the improper performance of duty and discharge of responsibility and to give timely notice to any employee or officer of the County of the possibility of the applicable coverage * * * may be insufficient to cover the potential loss * * * and that the possibility of personal liability for deficiencies could exist”.
All such Resolutions (Nos. 136-139) were passed on July 24, 1984, after the Legislature had received the 12-page opinion dated July 2, 1984, of the law firm of McCarthy, Fingar, Donovan, Drazen and Smith.
It is clear that by Resolutions Nos. 136 through 139, the Legislature attempted to do more than simply “inform the County Attorney of the position of the Legislature” (Wright affidavit, Mar. 25, 1985, at 5). The Legislature by such resolutions attempted to direct the prosecution of defense of a civil action by or against the County. It is noted in passing that under Putnam County Charter § 2.01, it is the Legislature which is, inter alla, the policy determining power of Putnam County. Indeed, the County Executive himself is bound to “execute and enforce all laws and resolutions of the County Legislature” (Charter § 3.02 [a]) and may make “such recommendations to the County Legislature with respect to the appearance of the County and its government as he may deem appropriate” (Charter § 3.02 [k]).
It has further been stated that “the County Attorney’s relationship with the county is akin to that of any attorney with a private client”. (County of Sullivan v Town of Thompson, 99 AD2d 574; see also, South Buffalo Terms, v Grobe, 148 Misc 646, 651, affd 239 App Div 881.) Under the law the County Attorney *524 is just that, he “advises and takes action when authorized * * * [County Law § 501] makes it quite clear that it is the county and the board of supervisors who are empowered to bring civil actions and proceedings; the county attorney’s authority is limited to prosecuting them.” (County of Sullivan v Town of Thompson, supra, pp 574-575.)
In the opinion of the court, the County Legislature is, under its Charter, free to accept or reject the “advice” of the County Attorney at its own risk in matters of defense or prosecution of civil matters.
It is noted in this matter that the County Legislature did not appoint an outside attorney-at-law to appear and prosecute a civil action but rather, by Resolution No. 112, hired “an independent legal advisor * * * to evaluate its position in this matter”. The law firm of McCarthy, Fingar, Donovan, Drazen and Smith by its work culminating in its report of July 2, 1984, did simply that — gave a review of the law based upon the facts presented to the Legislature and certain opinions which were not in accordance with those of the County Attorney. In effect, McCarthy, Fingar, Donovan, Drazen and Smith served as second legal consultant at the request of the Legislature.
Under both County Law § 209 and Putnam County Charter § 2.04 (i) the Legislature is empowered to conduct studies, audits and investigations. Under County Law § 209 such investigation may also concern itself with “the accounting for all money or property owned by or under the control of the county.” Indeed, a study or investigation into alleged mishandling of funds by a County office or officer is within the scope of the investigative powers conferred upon the County Legislature. (Cf. Paterson v Niagara County Legislature, 59 AD2d 1062.)
It is well settled that an attorney may not be compensated with public funds for services rendered by a municipal officer unless the attorney has been retained in accordance with statutory authority. (Corning v Village of Laurel Hollow, 48 NY2d 348, 351, and cites therein; see also, Moffatt v Christ, 74 AD2d 635 [2d Dept 1980].) This is, however, not a situation as envisioned by County Law § 409 wherein individual public officials employ counsel when it is the duty of the County or District Attorney to prosecute or defend such action. As was stated in Corning (supra, pp 351-352) “[t]he rationale underlying this rule — to guard against extravagance and collusion on the part of public officials” is not, in the opinion of this court, present under the circumstances wherein a legislative body seeks additional professional legal advice in a matter which directly affects not only public funds themselves but the performance and *525 possible reimbursement for acts done or not done by such other public officials. Indeed, in adopting the Putnam County Charter, the County Legislature was made “the appropriating and policy determining body of the County” (§2.04), and it is further implicit within section 2.04 (i) that if the Legislature during the course of an “investigation as it deems to be in the best interests of the County” employs “professional” advice which certainly, in the opinion of this court, includes legal advice, that such is an authorized expense chargeable to the County. Indeed, under the circumstances and exhibits as presented to this court, while not explicitly so stated, though the County Attorney may have proffered his advice in all good faith as being against the assertion of a ultra vires defense and/or counterclaim, the Legislature may well have been within its rights to deem such advice and subsequent acts a refusal by the County Attorney to carry out what it was in the process of determining to be a policy-making decision in the best interests of the County to pursue such a defense.
Accordingly, this court now declares and adjudges that Resolution No. R-112 of the Putnam County Legislature dated June 7, 1984, which authorized the hiring of an independent legal advisor to the Legislature and appropriated $10,000 for such expenditure was, under the Putnam County Charter and the County Law of the State of New York, and the circumstances of this case, a legitimate and legal act of the Legislature and that such expenses incurred as a result of such resolution are a legitimate County debt payable by respondent, Commissioner of Finance of Putnam County.
In approaching the issue of standing as raised by respondents on the Legislature’s application for mandamus, it is initially apparent that petitioner, Putnam County Legislature, as the governing body of the County of Putnam, has a legitimate interest in seeing that its mandates and enabling provisions and resolutions are subject to compliance by appropriate County officials. As stated above, the Legislature is the “appropriating and policy determining power of Putnam County” (Charter § 2.01; cf. Preamble to Charter § 2.04). Under Charter § 2.04 (b) the Legislature may “make appropriations [and] incur indebtedness”. Under County Law § 369 (1) “[n]o claim, account or demand against a county shall be audited or paid unless it is a lawful county charge.” Under section 369 (2): “every claim for the payment of money shall be audited by the [Legislature]”.
This legitimate interest of the Legislature in the carrying out of its mandate and the legislative function is sufficient, in the *526 opinion of this court, to bring it within the “zone of interest” necessary to establish standing. (Cf. Matter of Bradford Cent. School Dist. v Ambach, 56 NY2d 158; Matter of Dairylea Coop. v Walkley, 38 NY2d 6.) The Legislature, as any other party, has resort to the courts for article 78 review on perceived illegal administrative actions. That such administrative action on the part of respondents as alleged in the petition herein can have a harmful effect on petitioner/Legislature is self-evident. Where certain persons are hired as agents and/or independent contractors for their services by a governmental body, to force such independent agents to themselves resort to the court on each and every question wherein a determination must be made as to the legitimacy of the hiring act itself, is a burden which would certainly have negative impact on the ability of the County to employ necessary assistance in time of need. Indeed, many independent contractors might be seen to simply avoid involvement in any County work if the perceived benefit to them was not worth the equally perceived risk of the incurring of certain other financial and legal expenditures to enforce the obligation with which they had entered into in good faith. While this court finds that the respondents acted in good faith based upon what was perceived to be a legitimate interpretation by the County Attorney of his powers, having found that the action of the Legislature was proper, the court now finds mandamus appropriate.
Accordingly, there being no issue before the court as to the merit and expense of the services rendered on the part of McCarthy, Fingar, Donovan, Drazen and Smith to the Legislature and such services having been certified and audited by the Legislature as of November 1, 1984, and this court having further found and declared and adjudged that such hiring and employment of the law firm of McCarthy, Fingar, Donovan, Drazen and Smith was a legitimate legislative function under the circumstances of this case and it further being apparent and not in dispute but that the respondent, John Duffy, has refused to pay the submitted bill for services by McCarthy, Fingar, Donovan, Drazen and Smith on the advice of the County Executive, David D. Bruen, and this court further finding that under the Putnam County Charter § 4.02 (a) the Commissioner of Finance has a duty to “disburse all fees * * * and other funds of the County for which the County is responsible” and that such is a positive duty on respondent’s part, it is therefore ordered, adjudged and directed by this court that respondent, Commissioner of Finance, John Duffy, and respondent, David D. Bruen, County Executive of the County of Putnam, in their official *527 capacity, render payment in the sum of $9,893.40 plus legal interest from July 3,1984, to the date of entry of this order to the law firm of McCarthy, Fingar, Donovan, Drazen and Smith within 45 days after service upon such respondents by petitioners of a copy of this order with notice of entry thereon.
The above is the decision and order of this court on the converted action for a declaratory judgment and the article 78 petition in the nature of mandamus.