OPINION OF THE COURT
Kenneth K. Rohl, J.
From February 1, 1988 through February 12, 1988, petitioner, Eugene T. Dooley (Dooley), attended a National Sheriffs Institute Conference in Evanston, Illinois, driving to the symposium in an automobile owned by Suffolk County (Vehicle No. 1). At approximately 4:50 a.m. on February 6, 1988 in Chicago, Illinois, Dooley was involved in an automobile accident (Accident) with one Ramiro Martinez (Vehicle No. 2).
Thereafter, Dooley contacted a member of the Sheriffs Department, Henry Jacobi, who, on February 10, 1988, filed an MV-104 on his behalf which stated: "Vehicle #1 S/B struck Veh #2 N/B. Driver Veh #2 tried to get out of Veh #1 way, but was not successful. Driver Veh #1 struck Veh #2 on drivers [sic] side and rear. Driver Veh #1 stated that he fell asleep at the wheel and after striking Veh #2 he struck unknown object causing damage to the passenger side of vehicle.”
On February 24, 1988 George Gross (Gross), an investigator retained by Suffolk County (Suffolk), asked for and obtained a written notarized statement from Dooley regarding the Acci *179 dent. On February 25, 1988 petitioner transmitted a second written notarized statement to Gross asserting 'T did not use alcohol on the night of the accident.”, and also filed an amended MV-104[1] writing: "Vehicle #1 struck Vehicle #2. To the best of my knowledge Vehicle #1 had initial impact with roadway obstacle or debris, contributing to loss of vehicle control and subsequent accident impact.”
Thereafter, various newspapers[2] reported (i) an investigation had been commenced to determine Suffolk’s legal duty, if any, to Dooley; (ii) an individual alleged Dooley had been in a Chicago bar and appeared intoxicated several hours before the accident;[3] (iii) Dooley had signed a statement denying drinking any intoxicants and continued to so deny; and (iv) the Suffolk District Attorney was investigating whether Dooley should be criminally charged with filing a false sworn statement and/or perjury as a result of his notarized statements of February 24, 1988 and February 25, 1988 (Statements). The District Attorney had been given copies of the Statements by respondent, E. Thomas Boyle (Boyle), Suffolk County Attorney.
Attempting to block prospective criminal proceedings, petitioner commenced this civil litigation to obtain physical possession of the original Statements and to otherwise estop their delivery to the District Attorney.[4]
Dooley contends Boyle was, at all times, his attorney with respect to the Accident and that Boyle’s disclosure of his Statements to the District Attorney was violative of attorney-client privilege and motivated by partisan politics. "Boyle’s motives are suspect. He is the recent appointee of the new County Executive, a Democrat, whereas I am an elected Republican. I fear this is a case of political partisanship which has blinded Boyle even at the risk of all ethics.”
He further contends:
*180 "Boyle did not stop at a request for the District Attorney to prosecute me. He also strained to turn the County government, which he also represents, against me * * *
"Boyle never advised me of any conflict between his client Suffolk County, and me [sic]. He never advised me that he would disclose information I had given him. He never advised me to seek other counsel.” (Emphasis added.)
In effect, Dooley initially claimed Boyle simultaneously represented two clients (Dooley and Suffolk) whose interests were adverse.
On the other hand, Dooley never alleged that he, directly or indirectly, contacted Boyle, or in any way, affirmatively sought Boyle’s legal advice. Indeed, Dooley concedes all contact was initiated by the County Attorney or his agents.
Boyle contends he never violated attorney-client privilege since no such relationship ever existed between himself and Dooley; that from February 16, 1988 to date, he was and continues to be Suffolk County’s attorney and that: "[t]he purpose of the County Attorney’s inquiry was to ascertain the facts so that the Executive Department could be advised with respect to the fiscal and legal ramifications of this accident to the County of Suffolk, including the threshold question of whether the petitioner was acting within the scope of his duties, and was entitled to legal representation at county expense.”
A hearing was commenced and after eight days of testimony, petitioner’s attorney, John Ray, Esq. (Ray), orally moved to join Suffolk as a petitioner including a request that the court appoint him to represent Suffolk in future litigation. In support, Ray submitted an affidavit sworn to by Dooley in which petitioner now claimed, contrary to prior assertions, that his and Suffolk’s interests were not adverse but compatible since Suffolk has a, "vital interest in maintaining the confidentiality of the aforesaid documents”, to wit, the Statements might be used against the county in future civil litigation arising out of the Accident. Dooley further alleged that Boyle’s disclosure violated his attorney-client relationship with Suffolk.[5]
*181 "4. Pursuant to Respondent Boyle’s duty to represent Suffolk County in this accident matter, Respondent Boyle and his office conducted an investigation of the accident and other circumstances surrounding the .same, wherefor various documents came into his possession as attorney for Suffolk County, including various reports by his investigators, narratives, and statements he requested and received from Petitioner Dooley. Most, if not all of these documents were gathered to promote and defend Suffolk County’s interests.
”5. All of these documents and the information contained therein are privileged under the attorney-client privilege. The client is Suffolk County, and its attorney was Respondent Boyle. The privilege belongs to the client, not to the attorney.”[6] (Emphasis added.)
Upon this sworn admission the petition was dismissed; all further proceedings terminated and the motion to join Suffolk as a petitioner rendered moot.
Matter of Priest v Hennessey (51 NY2d 62) enunciates the principles for determining attorney-client privilege. "First, it is beyond dispute that no attorney-client privilege arises unless an attorney-client relationship has been established: Such a relationship arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services * * * Second, not all communications to an attorney are privileged. In order to make a valid claim of privilege, it must be shown that the information sought to be protected from disclosure was a 'confidential communication’ made to the attorney for the purpose of obtaining legal advice or services * * * Third, the burden of proving each element of the privilege rests upon the party asserting it * * * Finally, even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure.”
Dooley asserts that he meets these criteria because the County Attorney is automatically his attorney and he gave the Statements in confidence at "his” attorney’s request.
The Suffolk County Charter (art XVI, § C16-2) provides that the County Attorney shall be counsel "for the county and every agency and office thereof’ and that he "shall prosecute and defend all civil actions and proceedings brought by or *182 against the county, and County Legislature and any officer whose compensation is paid from county funds for an official act”. (See also, County Law § 501 [1].)
Threshold issues are immediately apparent. First, is Suffolk’s Sheriff an officer entitled to be defended by the County Attorney? Second, assuming the first question is answered affirmatively, is this entitlement to defense absolute or conditional? Thirdly, if defense is conditional did Dooley meet the prerequisites to obtaining such?
New York’s Constitution (NY Const, art XIII, § 13 [a] ["the county shall never be made responsible for the acts of the sheriff”]) unquestionably bars a county from indemnifying its Sheriff (as distinguished from the Sheriff’s employees) for his tortious acts (Barr v County of Albany, 50 NY2d 247). This estoppel is reiterated in Public Officer’s Law § 18 (1) (b) (responsibility to defend and indemnify employees "shall not include the sheriff of any county”) and the Suffolk County Code (art XVII, § A17-1) which provides:
"A. Any act of omission of any employee of the county in the office of the Sheriff, done or made in the performance of an official duty or for the performance of which the County is paid or receives compensation or a fee, shall be the act or omission of the County; and the damages, if any, resulting therefrom shall be deemed the liability of the County.
"B. Nothing contained in this section shall make the county responsible for the acts of the Sheriff thereof, nor relieve said Sheriff from any liability to which he is lawfully subject.” (Emphasis added.)
However, recognizing the difficulties of employing a highly qualified Sheriff who must be both a self-insurer and liable for possibly onerous legal fees in defense of job-related litigation prompted the Suffolk Legislature to enact a local law permitting defense by the County Attorney (Suffolk County Code, art 35, §§ 35-2, 35-3 [A], [B]). Such enactment is not in conflict with the aforestated constitutional proscription against indemnity. Rather, it is analogous to the defense versus indemnification provisions of private insurance contracts making the duty to defend broader than any obligation to indemnify or not to indemnify (1980 Opns Atty Gen 80-48; 1980 Opns St Comp No. 80-688; see, Giordano v O’Neill, 131 AD2d 722; Beare v Byrne, 103 AD2d 814). In other words, defense and indemnity are not coextensive.
*183 However, Suffolk’s assumption of defense is predicated upon compliance with conditions precedent enunciated in Suffolk County Code § 35-4 and subsequent to the County Attorney’s determining the allegedly tortious act occurred within the scope of employment or duties (Suffolk County Code § 35-3 [A]).
In relevant part, section 35-4 provides: "The duties to defend * * * shall be contingent upon delivery to the County Attorney of the original or a copy of any summons, complaint, process, notice, demand or pleading within five (5) days after he is served with such document and upon the full cooperation of the employee in the defense of such action or proceeding against the county based upon the same act or omission and in the prosecution of any appeal. Such delivery shall be deemed a request by the employee that the county provide for his defense”.
Section 35-3 (A) further provides in relevant part: "A. Upon compliance by the employee * * * with the provisions of Sec. 35-4 of this Article, the county shall provide for the defense of the employee in any civil action or proceeding * * * arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting, or in good faith purporting to act within the scope of his public employment or duties * * * The determination of any issue of whether or not an employee was acting within the scope of his public employment or duties at the time of the occurrence, act or omission giving rise to a claim shall be made in the first instance by the County Attorney.” (Emphasis added.)
This conditional duty to defend is, of necessity, based upon the particular circumstances of each case and is intended to insure that the County Attorney will not automatically be required to defend the Sheriff only to subsequently determine such defense to be in direct conflict with his obligation to represent the county (see, Suffolk County Charter, art XVI, § C16-2; County Law § 501). That this condition precedent does not guarantee against all possibility of conflict is recognized in County Law § 501 (2) which provides: "2. Whenever the interests of the board of supervisors or the county are inconsistent with the interests of any officer paid his compensation from county funds, the county attorney shall represent the interests of the board of supervisors and the county. In such case the officer may employ an attorney-at-law at his own expense *184 unless the provisions of section eighteen of the public officers law are applicable.”[7] (Emphasis added.)
The County Attorney’s absolute duty to defend Suffolk may never be superseded by his conditional duty to defend the Sheriff.
The necessity of investigation is further emphasized by Suffolk’s providing for a limited defense of the Sheriff during the investigatory period for the sole purpose of "avoiding] entry of a default judgement pending resolution of any question relating to the obligation of the county to provide a defense” (Suffolk County Code § 35-3 [D]). Such limited defense will terminate upon a determination that the act in issue occurred without the scope of public employment or duties.
That the Sheriff[8] is in a purgatory during the investigatory period cannot be remedied by the court. In the judiciary is lodged the power to interpret, declare and enforce the laws— not the power to legislate or otherwise "correct supposed errors, omissions or defects” therein (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 73, 2; Meltzer v Koenigsberg, 302 NY 523; Murphy v Board of Educ., 104 AD2d 796, affd 64 NY2d 856; Matter of State of New York v Strong Oil Co., 105 Misc 2d 803, appeal dismissed 87 AD2d 374). He must, during this period (absent the threat of entry of a default judgment), either retain private counsel at his own expense or proceed pro se at his own peril.[9]
Dooley’s claims that the County Attorney "has for many years been the Sheriff’s attorney * * * [and] * * * has never withdrawn from that relationship” and that he therefore believed the County Attorney automatically represented him[10] *185 is an oversimplification of the issue. There is no automatic representation. Statutory prerequisites must first be satisfied.
In summary, there is an archaic constitutional prohibition against any county indemnifying its Sheriff. However, Suffolk has chosen to and is not constitutionally prohibited from providing legal defense for its Sheriff provided he first complies with statutory conditions precedent including (a) delivery of legal process or notice to the County Attorney and (b) full cooperation with the County Attorney’s investigation into his entitlement to that defense and that the investigation determines that his act or omission occurred within the scope of his public employment or duties. Only then will he be entitled to defense. A failure to satisfy any of these prerequisites, including impeding necessary investigation, will ultimately result in his not being entitled to a defense provided by Suffolk or at its expense. In any event, he may never be indemnified for his acts.
In the instant case, notice of the Accident was apparently filed by Mr. Martinez directly against Suffolk as registered owner of vehicle No. 1. No such notice or any other form of process was served upon Dooley and he served no such notice on the county. He was never in peril of having a default judgment taken against him and he never made any other affirmative approach to obtaining legal advice from Boyle. Indeed, Dooley concedes it was the County Attorney’s office who approached him — a position entirely consistent with Boyle’s claims that at all times prior to the institution of this proceeding he was investigating the events surrounding the Accident to determine future liability and the duty to defend and/or indemnify. When one considers that the Sheriff’s convention was during daytime hours in Evanston, Illinois, whereas the Accident occurred at 4:50 a.m. allegedly after Dooley had been in a bar on a singles strip in Chicago, Illinois, it is self-evident that investigation was necessary and appropriate to determine if the events occurred within Dooley’s scope of employment or duties. Boyle possessed information which placed Suffolk’s interest in direct conflict with Dooley’s and he took required measures to fulfill his statutory duty to defend the county. As previously quoted, Dooley now swears that: "Respondent Boyle and his office conducted an investigation of the accident and other circumstances surrounding the same, wherefor various documents came into his possession as attorney for Suffolk County, including * * * statements he requested and received from Petitioner Dooley. Most, if not all *186 of these documents were gathered to promote and defend Suffolk County’s interests.”
Accordingly, the court finds there was never any attorney-client relationship between Dooley and Boyle; that the Statements were obtained on Suffolk’s behalf solely within the investigative process and were therefore not privileged; and that they are Suffolk’s and not Dooley’s property.
In any event, even if Boyle was deemed to be both Suffolk’s and Dooley’s attorney at the time the Statements were given, they can never be considered confidential within the context of this litigation. Where an attorney is consulted by two parties in a matter of common interest for their mutual benefit, nothing said by the parties or the attorney is deemed confidential in litigation between those parties or their personal representatives since their common interest forbids concealment of statements made by one from the other. (See, Richardson, Evidence § 413 [Prince 10th ed]; Annotation, Attorney-Client Privilege-Joint Clients, 4 ALR4th 765, 781; cf., Wallace v Wallace, 216 NY 28; Old Homestead Enters, v Hall, Jr. Enters., 102 AD2d 935; Brandman v Cross & Brown Co., 125 Misc 2d 185; Matter of Swantee, 90 Misc 2d 519.)
The court also finds that since the Statements were Suffolk’s property and conceivably indicative of a crime, Boyle acted appropriately in notifying the District Attorney and providing him copies of such. No ethical rules were violated.
Finally, petitioner’s request that his counsel fees in this litigation be paid by Suffolk is in all respects denied. Any interim determination to the contrary is hereby vacated.
Dooley’s entitlement to retain private counsel at the county’s expense can arise if (1) he was in peril of having a default judgment entered against him during the investigatory period (Suffolk County Code § 35-3 [D]); or (2) he was entitled to representation by the County Attorney and such representation would create a conflict of interest or be inappropriate (Suffolk County Code § 35-3 [B]); or (3) if he were otherwise entitled to private counsel pursuant to County Law § 501 (2).
As previously discussed, there was never an issue of default judgment and, accordingly, Dooley was not entitled to counsel to avoid entry of such "pending resolution of any question relating to the obligation of the county to provide a defense” (Suffolk County Code § 35-3 [D]).
Section 35-3 (B) of the Suffolk County Code provides that *187 where an employee (including the Sheriff) is, in the first instance, entitled to representation by the County Attorney but where such representation is either inappropriate (Suffolk County Code § 35-3 [B] [1]), or where "a court of competent jurisdiction determines that a conflict of interest exists” (Suffolk County Code § 35-3 [B] [2]), or where "representation by the County Attorney would be inadvisable due to the unavoidably of resources in the Department of Law” (Suffolk County Code § 35-3 [B] [3]), that employee shall be entitled to "select an attorney of his own choice as private counsel” (Suffolk County Code § 35-3 [C] [1]). Dooley has, to date, never been represented by or otherwise established entitlement to such representation by the County Attorney. Therefore, the exceptions to obtaining private counsel are inapplicable at this time.
Section 501 (2) of the County Law provides that the County Attorney shall represent the county and that a county officer shall pay his own legal expenses whenever his and the county’s interests are in conflict unless the provisions of Public Officers Law § 18 are applicable. That section provides that county employees, upon compliance with enumerated conditions precedent, shall be entitled to defense at the county’s expense for acts occurring within the scope of public employment or duties, but that such entitled employees "shall not include the sheriff of any county” (Public Officers Law § 18 [1] [b]).
As Sheriff, Dooley is clearly without the exception set forth in County Law § 501 (2) (as precluded by Public Officers Law § 18) and is not entitled to private counsel at county expense pursuant to that statute.
In summary:
(1) Respondent Boyle was never petitioner Dooley’s attorney.
(2) Boyle did not violate attorney-client privilege or any other ethical rule in giving copies of the written Statements to the District Attorney.
(3) The written Statements are the property of Suffolk and not Dooley.
(4) Dooley is not entitled to have his attorney’s fees paid for by Suffolk.
The petition is dismissed and respondents’ cross motion for summary judgment is granted.

. The cover letter indicates that actual forwarding to the Commissioner of Motor Vehicles was on March 3,1988.

. Newspaper articles were published in Newsday on March 1, 1988, March 4, 1988 and March 11, 1988; in the Shelter Island Reporter on March 10, 1988; and in the Suffolk Life Newspaper on March 16, 1988.

. The individual identified herself as Mary Fran Gleason, a former managing editor of the Shelter Island Reporter, who claimed she talked with Dooley at The Snuggery, a bar on the "Glitter Gulch”, a singles strip in Chicago, where she was doing research for a news article.

. Petitioner likewise sought to enjoin the District Attorney from all future criminal investigation, but subsequently discontinued proceedings against that respondent.

. Determination of Suffolk’s liability regarding the Accident and trial strategy, including determinations to admit or deny liability and/or contest only damages at trial, is premature as no lawsuit has been commenced to date. The court will not speculate nor should it speculate on the effect of tactical decisions which may or may not ever need be made.

. In light of this assertion by his client Dooley, the court notes Ray’s inconsistent position in attempting to claim privilege for Suffolk, a non-client.

. As stated supra (at 182), Public Officers Law 18 provides that the Sheriff shall neither be defended nor indemnified at county expense.

. Or for that matter any other employee as defined in section 35-2 of the Suffolk County Code.

. This holding is not intended to determine a situation in which the Sheriff or other Suffolk employee, involved in what he or she believes may be a tortious event, affirmatively goes to the County Attorney before process is served and specifically seeks his representation in a possible future lawsuit. It is suggested that perceived problems be brought to the attention of the appropriate legislative body for actions, if any, it deems necessary.

. During the course of the hearing, the prior County Attorney testified that he had spoken to and assured Dooley that he would represent the Sheriff in future lawsuits. This does not automatically create an attorney-client relationship or relieve the County Attorney from his statutory duty to first assure himself that the alleged act was within the scope of employment or duties.