Kevin D. Fennell, Esq. Informal Opinion City Attorney No. 2002-4 City of Batavia 432 East Main Street Batavia, New York 14020
Dear Mr. Fennell:
Your office inquired whether the City of Batavia ("city") may reimburse a member of its city council for filing fees incurred in unsuccessful litigation brought against the city pursuant to the State Open Meetings Law (Public Officers Law §§ 100 — 111). We conclude that the city may not, consistent with the "gift or loan" prohibition of the State Constitution (N.Y. Const., Art. VIII, § 1), reimburse such filing fees. Because there is neither express nor implied authority for an individual member of the Batavia City Council to commence such a suit against the city as part of his or her official duties, the city may not reimburse the expenditure in question.
You recite that the controversy arose out of an executive session of Batavia's City Council at which the acquisition of certain real property for a proposed water plant was discussed. This meeting occurred after the city had entered a contract by which the County of Genesee would supply water to city residents through a source to be determined. You advise that a "straw poll" of the council was taken at this meeting, authorizing the city manager to explore the county's possible interest in purchasing certain realty as a suitable site for a water plant. A member of the City Council, asserting that the executive session had violated the Open Meetings Law, commenced a CPLR article 78 proceeding to obtain a court ruling to that effect. That proceeding was dismissed without prejudice because it was incorrectly filed and served, and was never recommenced. The member then sought reimbursement from the city for the filing fees (approximately $245.00) in that unsuccessful suit.
For such reimbursement to be proper, there must be express or implied authorization for that payment. The unauthorized expenditure of municipal funds is an unconstitutional gift. The State Constitution provides that "[n]o county, city, town, village or school district shall give or loan any money or property to or in aid of any individual . . . ." N.Y. Const., Art. VIII, § 1. This prohibition extends to legal fees, costs and disbursements incurred in litigation by municipal officials unless such expenditures either are "authorized by statute or appropriate resolution of the governing body" or certain "extraordinary circumstances" otherwise obtain. Corning v. Village of Laurel Hollow,48 N.Y.2d 348, 351 (1979).
In cases involving a public official's entitlement to reimbursement for the retention of counsel,[1] the Court of Appeals has explained what these circumstances are:
 Notwithstanding lack of specific statutory authority, a municipal board or officers possess implied authority to employ counsel in the good faith prosecution or defense of an action undertaken in the public interest, and in conjunction with its or his official duties where the municipal attorney refused to act, or was incapable of, or was disqualified from, acting.
Cahn v. Town of Huntington, 29 N.Y.2d 451, 455 (1972); see also Moffattv. Christ, 74 A.D.2d 635 (2d Dep't), aff'd for reasons stated byAppellate Division, 51 N.Y.2d 806 (1980).[2]
In the present circumstances, both the issue of express authority for reimbursement of litigation expenses and that of implied authority can be addressed by answering the question of whether commencement of an Open Meetings Law suit lay within the council member's official duties. As to express authority, no State statute entitles the council member to reimbursement. The Batavia city charter provides that "Council members may be reimbursed for actual expenses incurred in the performance of their official duties," but does not define these official duties. As noted above, the implied right to reimbursement for legal expenses similarly arises only when they are undertaken in conjunction with an officer's official duties.[3]
In our view, commencement and prosecution of a proceeding under the Open Meetings Law were not among the council member's official duties.[4]
The scope of a public officer's "official duties" cannot be defined with a simple formula. As the Second Circuit has observed, "[t]here is no bright-line test to define" official duties. United States v. Hoffer,869 F.2d 123, 125 (2d Cir. 1989) (interpreting 18 U.S.C. § 111, which penalizes assault on federal officers engaged in performance of their "official duties"). Rather, the question is whether the officer is "`acting within the scope of what [he or she] is employed to do.'" Id. at 126 (quoting United States v. Heliczer, 373 F.2d 241, 245 (2d Cir.),cert. denied, 388 U.S. 917 (1967)). A task that is within an officer's "official duties" is one that is connected with the core responsibilities of the job that he or she is performing.
Prosecution of a suit to enforce the Open Meetings Law is not, in our opinion, among a city legislator's core responsibilities. The Open Meetings Law is, obviously, an important means of assuring the accountability of government. Our opinions have often commented on the significance of the law and the requirement that officials take it seriously and abide by it. See, e.g., Op. Atty. Gen. (Inf.) No. 94-78; 1980 Op. Atty. Gen. (Inf.) 145; 1978 Op. Atty. Gen. 24. Nonetheless, although public officials whose meetings are subject to the Open Meetings Law must conduct those meetings in accordance with that law, the Open Meetings Law establishes no unique role for municipal officials in policing alleged violations. Rather, officials who commence or want to commence Open Meetings Law suits have the same rights, responsibilities and status as all other citizens.
An examination of the Open Meetings Law makes plain that it vindicates interests of the general public, not only or even especially those of public officials. The statute provides, with certain exceptions, that "[e]very meeting of a public body shall be open to the general public." Public Officers Law § 103(b). "The purpose of the Open Meetings Law," the Court of Appeals has said, "is to prevent municipal governments from debating and deciding in private what they are required to debate and decide in public." Gernatt Asphalt Products, Inc. v. Townof Sardinia, 87 N.Y.2d 668, 686 (1996). The "legislative declaration" of the statute's purpose likewise makes this clear:
 It is essential . . . that the citizens of this state be fully aware of and able to observe the performance of public officials . . . . The people must be able to remain informed if they are to retain control over those who are their public servants.
Public Officers Law § 100; see also Gordon v. Village ofMonticello, 87 N.Y.2d 124, 128 (1995) ("statutory policy" of Open Meetings Law is "keeping New Yorkers better apprised of the actions of their elected officials").
Thus, while public officials are obliged to observe the Open Meetings Law, the general public is empowered to enforce it.[5] "Any aggrievedperson shall have standing to enforce the provisions of [the Open Meetings Law] against a public body by the commencement of" an article 78 proceeding or a declaratory judgment action. Id. § 107(1) (emphasis added). Moreover, anyone with standing to commence such a proceeding is eligible to recover costs and attorney's fees incurred in a successful suit:
 In any proceeding brought pursuant to this section, costs and reasonable attorney fees may be awarded by the court, in its discretion, to the successful party.
Id. § 107(2).
Public officials thus have no unique role in the judicial enforcement of the Open Meetings Law. Rather, a public official who commences such a suit has the same status as any other individual who does so: "[T]hat of a private attorney general seeking vindication of the public's right to observe." Sanna v. Lindenhurst Bd. of Educ., 85 A.D.2d 157, 160-161 (2d Dep't 1982). A public official, like any other citizen, may recover costs and attorney's fees under section 107(2) when his or her suit succeeds, but not unless it does and not because of his or her status as an officer. The opportunities for collusion among public officers and their attorneys if such suits were among an officer's official duties further indicate that this is the correct view of the law. See Cahn,29 N.Y.2d at 455
(rule that "the power to employ counsel by a municipal board or officer is not deemed to be incidental to such board or officer" is "designed as a safeguard against extravagance or corruption of municipal officials, as well as against their collusion with attorneys"). Accordingly, commencement of a suit under the Open Meetings Law is not part of a municipal officer's official duties, and a Batavia City Council member may not recover from the city his or her filing fees incurred in an unsuccessful Open Meetings Law suit against the city.
The Attorney General renders formal opinions only to officers and departments of the state government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
JAMES D. COLE, Assistant Solicitor General
In Charge of Opinions
By: ______________________
DANIEL SMIRLOCK
Deputy Solicitor General
[1] In Corning, the Court of Appeals made clear that the principles articulated there apply with equal force to reimbursement for legal fees and reimbursement for court costs and other litigation expenses. See48 N.Y.2d at 350, 353-54 and n. 1.
[2] The Court of Appeals has also noted that a government's retroactive compensation of an individual "does not offend the [constitutional] no-gift prohibition if it rests on an adequate moral obligation." Ruotolov. State, 83 N.Y.2d 248, 259 (1954). "The moral obligation analysis," the Court noted, "generally involves a case-by-case examination." Id. For a moral obligation of reimbursement to arise, there must be "some higher obligation of honor, fairness or broad public responsibility"; "[s]tated differently, it must affirmatively appear that not to act would condone a travesty of justice." Id. In the present situation, the official's petition was dismissed without prejudice because it was incorrectly filed and served. She elected not to recommence the proceeding, which accordingly produced no effect beyond the current inquiry. Under these circumstances, it cannot be said that a failure to reimburse the official for her filing fees condones a travesty of justice.
[3] Because the question of whether the council member had implied authority to commence an Open Meetings Law proceeding can be answered by considering whether commencement of such a suit lay within her official duties, we do not address and offer no opinion whether the present circumstances satisfy the other criteria giving rise to such implied authority.
[4] The question of whether commencement and maintenance of a particular lawsuit is part of a legislator's official duties appears little different from the question of whether the legislator has capacity to bring the action or proceeding. According to the Court of Appeals, a legislator has capacity to bring a particular claim if she has "`"functional responsibility within the zone of interest to be protected."'" Silver v. Pataki, 96 N.Y.2d 532, 537 (2001) (citations omitted). Thus, in Silver, because a state legislator's "responsibility necessarily includes continuing concern for protecting the integrity of one's vote and implies the power to challenge in court the effectiveness of a vote that has allegedly been unconstitutionally nullified," the Speaker of the Assembly had capacity to challenge the Governor's use of the line-item veto. This approach would not change the result of the analysis in the text of this opinion. The ability of a legislator to cast a meaningful vote is at the core of his or her job. By contrast, while it is part of a public official's "functional responsibility" to obey the Open Meetings Law, such an official has no special responsibility, beyond that to the general public, to seek judicial enforcement of that law when she believes it has been violated. Because viewing the question in terms of capacity neither adds to nor changes the analysis above, and because the suit at issue has concluded and cannot be revived, we confine our opinion to the "official duties" question.
[5] This fact helps distinguish the present situation from that inCahn, in which reimbursement of legal fees was permitted. Cahn was the culmination of a long-standing dispute between a Town Board and the town's Planning Board. At issue was which board had "supervision, control and management of the planning staff and planning department."29 N.Y.2d at 453. Authority to conduct litigation to resolve this issue fell within the Planning Board's official duties because such authority was "necessarily implied in order to enable the board to effect the purposes of its creation and to allow it to properly function." Id. at 455. Here, by contrast, the ability of the City Council to function properly does not depend on the maintenance of an Open Meetings Law proceeding by a member of the Council.