18-0575-cv
PHL v. Town of Oyster Bay

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2018

(Argued: October 24, 2018                    Decided: July 9, 2019)

Docket No. 18-0575-cv

_____

PHL VARIABLE INSURANCE COMPANY,

*Plaintiff-Appellant*,

- v. -

TOWN OF OYSTER BAY,

*Defendant-Appellee.*
_____

Before: KATZMANN, *Chief Judge*, KEARSE, *Circuit Judge*, and MEYER,

*District Judge*[*]

---

[*]   Judge Jeffrey A. Meyer, of the United States District Court for the District of Connecticut, sitting by designation.

Appeal from so much of an order of the United States District Court for the Eastern District of New York, Sandra J. Feuerstein, *Judge*, as denied reconsideration of a final judgment dismissing plaintiff's amended complaint alleging claims of, *inter alia*, breach of contract, innocent misrepresentation, and fraud in connection with plaintiff's loan to a licensee of defendant Town of Oyster Bay that was allegedly secured by the Town. The district court declined to reconsider its original decision granting the Town's motion pursuant to Fed. R. Civ. P. 12(b)(6) to to dismiss the amended complaint for failure to state a claim, on the ground—adhered to in the postjudgment order—that the amended complaint did not plausibly allege that the claimed agreement by the Town had been approved by the Town's governing board through a resolution as required by New York Town Law § 64(6), and hence did not plausibly allege the existence of a valid and enforceable contract. *See PHL Variable Insurance Co. v. Town of Oyster Bay*, 16-CV-4013, 2017 WL 2371188, at *12 (E.D.N.Y. May 30, 2017); Opinion and Order dated January 29, 2018. On appeal, plaintiff contends principally that the court (a) erred in failing to view the amended complaint as alleging board authorization of the contract, (b) erred in ruling that PHL failed to allege actionable misrepresentation, and (c) abused its discretion in refusing to allow plaintiff to file a second amended complaint to allege ratification.

2

We note that certain of plaintiff's contentions are beyond the scope of its notice of appeal. Finding no merit in any of its contentions, we affirm.

Affirmed.

BRYAN F. LEWIS, Islandia, New York (Jennifer H. McGay, Lewis Johs Avallone Aviles, Islandia, New York, on the brief), *for Plaintiff-Appellant.*

KATHLEEN M. SULLIVAN, New York, New York (Jonathan E. Pickhardt, Rex Lee, Monica E. Tarazi, Quinn Emanuel Urquhart & Sullivan, New York, New York, on the brief), *for Defendant-Appellee.*

KEARSE, *Circuit Judge*:

Plaintiff PHL Variable Insurance Company ("PHL") appeals from so much of an order of the United States District Court for the Eastern District of New York, Sandra J. Feuerstein, *Judge*, as denied reconsideration of a final judgment dismissing PHL's amended complaint ("Amended Complaint") alleging claims of, *inter alia*, breach of contract, innocent misrepresentation, and fraud, in connection with PHL's making to a licensee of defendant Town of Oyster Bay ("Town") a loan that was allegedly secured by the Town. The district court declined to reconsider its original decision granting the Town's motion pursuant to Fed. R. Civ. P. 12(b)(6)

to dismiss the Amended Complaint for failure to state a claim, on the ground—adhered to in the postjudgment order—that the amended complaint did not plausibly allege that the claimed agreement by the Town had been approved by the Town's governing board through a resolution as required by New York Town Law § 64(6), and hence did not plausibly allege the existence of a valid and enforceable contract. *See PHL Variable Insurance Co. v. Town of Oyster Bay*, 16-CV-4013, 2017 WL 2371188, at *12 (E.D.N.Y. May 30, 2017) ("D.Ct. 2017 Opinion"); Opinion and Order dated January 29, 2018. On appeal, PHL contends principally that the court (a) erred in failing to view the amended complaint as alleging Board authorization of the contract, (b) erred in ruling that PHL failed to allege actionable misrepresentation, and (c) abused its discretion in refusing to allow plaintiff to file a second amended complaint to allege Board ratification of the contract. Finding no merit in plaintiff's contentions, we affirm.

# I. BACKGROUND

The following account is based on nonconclusory factual allegations in the Amended Complaint, which we accept as true for purposes of reviewing the dismissal pursuant to Rule 12(b)(6).

4

A. *The Municipal Concession Contracts*

The Town, located in Nassau County, New York, owns and operates several recreational facilities, including a municipal golf course ("Golf Course") that offers multiple dining and concession facilities ("Facilities"). The claims asserted by PHL relate to agreements entered into by the Town with one or more nonparty entities for the operation of food and beverage services at the Golf Course and for the funding and implementation of major capital improvements to the Golf Course club house.

In an October 2000 agreement between the Town and nonparty SRB Catering Corp. d/b/a H.R. Singleton's Classic American Grille ("SRB Catering"), the Town licensed SRB Catering, for a 20-year term, to operate the Golf Course dining and concession facilities, for which it would pay fees to the Town, and required SRB Catering to, *inter alia*, expend approximately $2,097,000 in making specific capital improvements to the Facilities within the first three years of the agreement ("Concession Agreement"). This Concession Agreement, attached to the Amended Complaint as Exhibit A, was authorized by Town Board Resolution 638-2000. Upon

completion and acceptance of the work, title to all capital improvements was to vest in the Town. (*See* Concession Agreement ¶ 39(g).)

The Concession Agreement, whose term was to end on December 31, 2020, gave the Town an option to renew SRB Catering's license, extending it for a 10-year period. In April 2005, in light of the fact that SRB Catering, while only obligated by the Concession Agreement to expend $2,097,000 in making capital improvements, had in fact expended $4,600,000 for such improvements, the Town entered into an agreement with nonparty SRB Convention and Catering Corp., d/b/a The Woodlands and PassionFish ("SRB Convention"), that amended the Concession Agreement ("2005 Amendment" or "FACA"). (*See* Amended Complaint ¶¶ 17-18 & Exhibit B.) The parties during this litigation have treated SRB Catering and SRB Convention as the same entity, *see*, *e.g.*, D.Ct. 2017 Opinion, at *2 n.2 (noting such treatment despite indications that SRB Catering and SRB Convention were different entities), and the 2005 Amendment made no distinction between the two. The FACA at the outset defined SRB Convention as "the 'CONCESSIONAIRE'"; its introductory "WHEREAS" clause referred to the "major capital improvements heretofore performed" at the Golf Course "by the CONCESSIONAIRE"; and paragraph 37 referred to license fees that "the CONCESSIONAIRE began to pay the TOWN" on

6

"January 1, 2001." Accordingly, we will refer to SRB Catering and SRB Convention singly or collectively as "SRB."

The FACA, which was authorized by Town Board Resolution No. 313-2005, provided, *inter alia*, that the Town accepted the $4,600,000 in capital improvements already made "by the CONCESSIONAIRE" and noted that "[t]he CONCESSIONAIRE may make additional capital improvements . . . at its own cost and expense, with no setoff" against payments due the Town (FACA ¶ 39(b)). It noted the Town's option to renew the Concession Agreement for a "ten-year renewal" period and stated that the Town "exercises the renewal" and that the "[FACA] shall be effective through December 31, 2029 [*sic*]." (FACA ¶ 37.)

In September 2008, the Town and SRB, after additional capital improvements had been made, entered into another agreement to amend the Concession Agreement ("2008 Agreement"). The 2008 Agreement, which was authorized by Town Board Resolution No. 889-2008, noted that SRB, having been obligated to expend $2,097,000 and having actually expended $4,600,000, "now proposed to make an additional $3,250,000 in capital improvements, to the facility, within the next three years." (2008 Agreement at 1.) The 2008 Agreement required SRB to make the additional $3,250,000 in improvements by the end of 2011; and "[i]n

7

consideration," the Town extended the term of the licence for an additional 20 years, through December 31, 2049.  (*Id*. at 2.)

B.  *Enter PHL*

"Sometime during 2010, SRB determined that it would require financing to, *inter alia*, properly operate the Facilities and complete the improvements required by the terms of" the 2008 Agreement (Amended Complaint ¶ 22), and it entered into negotiations with an entity that was "a loan broker for PHL" (*id*. ¶ 24).  The Amended Complaint alleged that "PHL was unwilling to commit loan money to SRB" because SRB "had no collateral to support any potential loan."  (*Id*. ¶¶ 25-26.)  Accordingly, PHL sought "a transaction that would assure that PHL would receive significant monies from [the Town] in the event that SRB defaulted in its repayment obligations."  (*Id*. ¶ 27.)

The Amended Complaint alleged that the respective attorneys for SRB, the Town, PHL, and its broker "collaboratively created a vehicle whereby," if SRB defaulted on its loan, the Concession Agreement would be terminated automatically and "[the Town] would be required to" pay PHL the outstanding balance on SRB's loan.  (*Id*. ¶ 28.)

29. As a result of the successful conclusion of those negotiations, []PHL agreed to provide financing to SRB in the amount of $7,843,138.08, inclusive of interest ("Loan").

. . . .

31. Additionally, contemporaneously with, and as part of the Loan transaction, SRB and [the Town] agreed to amend the *Concession Agreement*. That amendment was effectuated by a certain *Amendment to Concession Agreement* dated as of November 18, 2011, a true and accurate copy of which is attached hereto as *Exhibit F* . . . .

(Amended Complaint ¶¶ 28-29, 31 (italics in original).) And pursuant to that subsequent "Amendment to Concession Agreement" (which, similarly to the district court, we will refer to as the "SACA"), if SRB defaulted on its loan, the Town would be obligated to pay PHL "as described above" (*id*. ¶ 32).

In addition, the SACA provided that even if SRB did not default on its loan, if the Town terminated the Concession Agreement for cause—*e.g.*, for SRB's failure to make contractual payments to the Town (*see* Concession Agreement ¶ 32)—the Town would be required to make a "Cause Termination Payment" to PHL (Amended Complaint ¶ 33). The amount of such a payment would be "five percent (5%) of the capital improvements made by SRB to the Facilities for each year[], or part of a year, remaining in the initial term of the [*Concession Agreement*]," including

9

renewal periods, up to "100% of the value of said improvements"—which "as of the date" of the SACA were agreed to have an "aggregate value" of "$10,000,000.00." (*Id.* (italics in original).)

PHL, which was not a party to the SACA, was thus "an intended third-party beneficiary of the [SACA]" (Amended Complaint page 11, ¶ 39). The SACA provided that the Town's obligation to pay PHL "would not be subject to any defenses, including but not limited to, the defenses of bankruptcy, or insolvency of [SRB]." (*Id.* ¶ 34.)

C. *The Present Action*

SRB ultimately ceased making payments to PHL on its loan, and in or about November 2015, PHL demanded payment of the balance from the Town. As of June 2016, the amount demanded by PHL totaled $6,252,623.82, including principal of $3,853,002.29. (*See, e.g.*, Amended Complaint page 11, ¶ 38.) The Town refused to pay, stating that the SACA was "of no legal effect because" it "purport[s] to make [the Town] a guarantor of the . . . [L]oan, which violates Article VIII, § 1 of the New York State Constitution, and because [the SACA] was [not] authorized by a Town

10

Board Resolution, as required under New York State Town Law § 64(6)." (*E.g.,* Amended Complaint page 14, ¶ 39 (internal quotation marks omitted).)

PHL commenced the present action in July 2016, asserting 12 causes of action for damages: two alleging breach of contract; one alleging unjust enrichment; and nine alleging fraudulent, or negligent, or innocent misrepresentations in three documents PHL received from firms or attorneys representing or employed by the Town. In the misrepresentation claims, PHL alleged that it had agreed to make the SRB loan only after receiving from the Town Attorney a copy of the SACA (attached to the Amended Complaint as Exhibit F) stating that if SRB defaulted on its loan obligations to PHL or on its Concession Agreement obligations to the Town, the Town agreed to make payments to PHL (*see, e.g.,* Amended Complaint page 22, ¶¶ 35-36), and only after demanding and receiving an opinion letter from the Deputy Town Attorney and an opinion letter from the Town's outside counsel (*see, e.g.,* Amended Complaint page 13, ¶¶ 35-38; *id.* pages 15-16, ¶¶ 37-38; *id.* Exhibits I and K). Both of the opinion letters stated that the Town had the "power and authority to conduct the business" described in the SACA, that the SACA was "duly authorized by all necessary action" by the Town, and that the SACA was a "valid binding obligation" of the Town. (*Id.* page 13, ¶ 38; *id.* page 15, ¶ 38.) The Amended

Complaint alleged that PHL had reasonably relied on the representations in the SACA and the opinion letters and that they were knowingly or negligently or innocently false.

The Town moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint for failure to state a claim on which relief can be granted, based on, *inter alia*, the absence of a Town Board resolution authorizing the SACA. The district court granted the motion in May 2017, concluding principally, as described below, that the SACA was invalid because there was no indication in the Amended Complaint that the SACA was ever approved or ratified by the Town Board, as required by New York statutory law. *See* D.Ct. 2017 Opinion, 2017 WL 2371188, at *19. Judgment was entered in June 2017 dismissing the action. Following a timely motion by PHL for reconsideration as to the dismissal of its claims for breach of contract, innocent misrepresentation, and fraud, the court granted reconsideration in part, rescinding certain of its original rationales—which are no longer at issue—but adhered to other rationales that required dismissals. *See* Opinion and Order dated January 29, 2018 ("D.Ct. 2018 Order" or "2018 Order").

1. *The May 2017 Decision*

In concluding that PHL's contract claims must be dismissed for lack of a valid contract between PHL and the Town, the district court stated principally as follows:

> "[A] municipality's power to contract is statutorily restricted for the benefit of the public." *Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 748 (S.D.N.Y. 1984); *see also Scarborough Props. Corp. v. Village of Briarcliff Manor*, 278 N.Y. 370, 375-76, 16 N.E.2d 369 (N.Y. 1938) ("The power of a [municipality] to enter into contracts and to incur financial obligations is subject to statutory conditions and restrictions intended to protect the inhabitants and taxpayers against ill-considered or extravagant action.") "*Town Law § 64(6) demands that a formal resolution be passed by the Town Board* and executed by the Town Supervisor in the name of the Town *before a Town can be bound by any contract*." *Verifacts Grp., Inc. v. Town of Babylon*, 267 A.D.2d 379, 379, 700 N.Y.S.2d 75 (N.Y. App. Div. 1999); *see also Glenville Police Benevolent Ass'n v. Mosher*, 31 A.D.3d 874, 875, 816 N.Y.S.2d 915 (N.Y. App. Div. 2006) ("Town Law § 64(6) makes abundantly clear that a town cannot be bound contractually unless the contract has been approved by the town board and executed by the supervisor in the town's name.") "*Absent strict compliance with the formal requirements of this statute, no valid contract binding a Town may be found to exist*." *Verifacts*, 267 A.D.2d at 379, 700 N.Y.S.2d 75; *see also Granada Bldgs., Inc. v. City of Kingston*, 58 N.Y.2d 705, 708, 458 N.Y.S.2d 906, 444 N.E.2d 1325 (N.Y. 1982) ("Municipal contracts which violate express statutory provisions are invalid[.]"); *Mans Constr. Oversite, Ltd. v. City of Peekskill*, 114 A.D.3d 911, 911-12, 980 N.Y.S.2d 822 (N.Y. App. Div. 2014) ("A municipal contract which does not comply with statutory requirements or local law is invalid and unenforceable[.]" (quotations and citation omitted));

13

*Goldberg v. Penny*, 163 A.D.2d 352, 353 (N.Y. App. Div. 1990) ("It is fundamental that a municipality can only contract for an authorized purpose and then only in the manner provided by statute.").

D.Ct. 2017 Opinion, 2017 WL 2371188, at *11 (emphases ours). The district court noted that

"[a] party contracting with a municipality is chargeable with knowledge of the statutes which regulate its contracting powers and is bound by them[.]" *Parsa v. State of New York*, 64 N.Y.2d 143, 147, 485 N.Y.S.2d 27, 474 N.E.2d 235 (N.Y. 1984); . . . *Town of Oneonta v. City of Oneonta*, 191 A.D.2d 891, 892, 594 N.Y.S.2d 838 (N.Y. App. Div. 1993) ("*The powers of a municipal corporation are wholly statutory and every person who deals with such a body is bound to know the extent of its authority and the limitations on its power[.]*")

D.Ct. 2017 Opinion, 2017 WL 2371188, at *11 (emphasis ours). The court concluded that

*[s]ince there is no indication in the amended complaint that the SACA was ever* approved by the Town Supervisor or *ratified by the Town Board*, the amended complaint *fails to state a plausible claim that a valid and binding contract existed between SRB Convention and the Town that was intended for plaintiff's benefit. See, e.g.,* **Merrick Gables Ass'n, Inc. v. Town of Hempstead**, 691 F. Supp. 2d 355, 363 (E.D.N.Y. 2010) (dismissing the plaintiffs' breach of contract claim because there was no indication that the alleged agreement[s] were ever approved by the Hempstead Town Supervisor or ratified by the Hempstead Town Board); *Plaza Drive Grp. of CNY, LLC v. Town of Sennett*, 115 A.D.3d 1165, 982 N.Y.S.2d 610 (N.Y. App. Div. 2014) (granting judgment in favor of the Town of Sennett declaring that a certain unsigned letter agreement was not

14

a binding contract and was unenforceable against it because the plaintiff had not alleged that the Sennett Town Board considered or approved the letter agreement as required by [N.Y.] Town Law § 64(6) so as to establish a valid contract.).

D.Ct. 2017 Opinion, 2017 WL 2371188, at *12 (emphases added). The court noted in addition that "although the [attorneys' letters] . . . and the SACA refer to the Town Resolutions approving the prior agreements relating to the SACA, (*see id.*, Exs. F, I and K), *there is no indication in those documents, the pleadings or any of the other documents attached to the amended complaint that the Town Board ever passed a Town Resolution approving the SACA*." D.Ct. 2017 Opinion, 2017 WL 2371188, at *12 (emphases added).

In opposition to the Town's motion to dismiss on the basis that there had been no Town Board authorization, PHL had submitted Town Resolution No. 256-2010. The court found that resolution inapposite, however, because it

merely "authorized and directed" the Town Supervisor "to enter into an agreement with" [SRB Convention's and . . . [a third SRB-named entity's] "bank relating to the loan, and an agreement with [SRB Convention and . . . [that third SRB-named entity] regarding the use of the loan proceeds at [the Golf Course and TOBAY Beach], *subject to the negotiation of acceptable terms in said agreements*."

D.Ct. 2017 Opinion, 2017 WL 2371188, at *12 n.8 (quoting Town Resolution No. 256-2010 (emphasis in district court opinion)). In addition to noting that this language

15

amounted to "nothing more than" approval of an agreement in principle "'in which . . . material term[s] [are] left for future negotiations,'" and which constitutes "an unenforceable 'agreement to agree,'" D.Ct. 2017 Opinion, 2017 WL 2371188, at *12 n.8 (quoting *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 687 (1991)), the district court pointed out that "there is *no indication that [R]esolution [No. 256-2010], which was adopted in March 2010, is related in any way to the loan plaintiff made to SRB Convention* in November 2011, *almost two (2) years later*." D.Ct. 2017 Opinion, 2017 WL 2371188, at *12 n.8 (emphases added).

The court ruled that the absence of Town Board authorization for the Town to enter into the SACA also required dismissal of PHL's claim for unjust enrichment because

"[w]here the Legislature provides that valid contracts may be made only by specified officers or boards and in specified manner, *no implied contract* to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions *can create an obligation or liability of the [municipality]*. . . . The creation of an obligation against the town, by way of contract, cannot be founded upon omission of action by the town officials, but must be the result of an affirmative determination to create the obligation in the form and manner provided by statute." *New York Tel. Co. v. Town of N. Hempstead*, 41 N.Y.2d 691, 696, 395 N.Y.S.2d 143, 363 N.E.2d 694 (N.Y. 1977) (quotations and citations omitted). "*[E]quitable powers of the courts may not be invoked to sanction*

*disregard of statutory safeguards and restrictions." Seif [v. City of Long Beach]*, 286 N.Y. [382,] 387-88, 36 N.E.2d 630 [(N.Y. 1941)]. *Accordingly, "[a]s a general rule, a claim against a municipality in quantum meruit will not lie where the original contract is void as contrary to statute or ultra vires[.]" Vrooman v. Village of Middleville*, 91 A.D.2d 833, 834, 458 N.Y.S.2d 424 (N.Y. App. Div. 1982), *lv. denied*, 58 N.Y.2d 610, 462 N.Y.S.2d 1028, 449 N.E.2d 427 (N.Y. 1983).

D.Ct. 2017 Opinion, 2017 WL 2371188, at *13 (emphases ours). The court also saw in the Amended Complaint "no indication that any of the proceeds of the loan [PHL] made to SRB . . . were actually utilized in any way to bestow a direct benefit upon the Town." *Id.* at *14.

With regard to PHL's fraud claims, the court noted, *inter alia*, that for a contract to be "valid and binding," it "required Town Board approval," and found that because "*it is clear from the face of the SACA that it did not comply with the statutory requirements [of New York law]*, PHL . . . could not have reasonably relied upon the purported misrepresentations in the" attorneys' opinion letters. *Id.* at *16 (emphasis added). Nor were there "any factual allegations [in the Amended Complaint] from which it may be reasonably inferred that [PHL] justifiably relied upon the purported misrepresentations" in those opinion letters. *Id.* at *18.

17

The court dismissed PHL's claims of innocent and negligent misrepresentation for the same reason, as well as because the Amended Complaint did not contain "any factual allegations from which a special relationship between [PHL] and [the Town] . . . may reasonably be inferred," *id.* at *19.

2. *The January 2018 Order*

On PHL's motion for reconsideration, the district court, although rescinding some of its earlier rationales, adhered to all of the above reasoning leading to the dismissal of PHL's claims of breach of contract, fraud, and innocent misrepresentation. *See* D.Ct. 2018 Order at 2.

The court also denied PHL's motion for leave to file a second amended complaint in order to allege ratification of the SACA on the basis of "newly discovered evidence," consisting principally of a resolution—Resolution No. 253-2014—adopted by the Town Board in 2014 ("2014 Resolution"). The court noted that while that resolution contained references to the agreements reached by the Town with SRB in 2000, 2005, and 2008, *see id.* at 13-14,

> [t]here is no reference to the SACA in the 2014 Resolution, nor any
> basis to infer therefrom that the Town Board had any knowledge
> of the existence or terms of the SACA.

D.Ct. 2018 Order at 14.

18

## II. DISCUSSION

On appeal PHL contends principally that the district court erred in dismissing the Amended Complaint because it failed to note the presence of allegations sufficient to allege (1) the existence of an enforceable contract, (2) PHL's entitlement to recover damages for unjust enrichment, and (3) the existence of a special relationship between PHL and the Town sufficient to support claims of actionable misrepresentations, including negligent misrepresentation. PHL also contends that the court abused its discretion in denying PHL's request for leave to file a second amended complaint in order to allege Board ratification. We are unpersuaded.

A. *The Scope of the Appeal*

We note at the outset an issue as to our jurisdiction to entertain PHL's contentions challenging the dismissal of certain of its claims. Rule 3(c) of the Federal Rules of Appellate Procedure provides that a notice of appeal "must designate the judgment, order, or part thereof appealed from." Fed. R. App. R. 3(c)(1)(B). We

19

generally lack jurisdiction to review a decision that was not mentioned in the notice of appeal. *See, e.g.*, *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256 (2d Cir. 1995) (ruling that this Court, on an appeal from an order dismissing a claim upon reconsideration, had "no jurisdiction to review the district court's earlier decision to dismiss [a different claim]," since the appellant "fail[ed to mention the [earlier] order in his notice of appeal," and the court's reconsideration order in no way revisited its earlier dismissal). However, we "liberally construe" notices of appeal where the appellant's intention is discernable, such as where a notice of appeal from a judgment was filed and withdrawn because of a pending motion to amend the judgment, and the subsequent notice of appeal mentioned only the denial of the motion to amend and not the judgment itself. *E.g., State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 413 (2d Cir. 1990).

In the present case, the first paragraph of PHL's Notice of Appeal dated February 27, 2018 ("Notice of Appeal") stated that

> [n]otice is hereby given that PHL . . . hereby appeals to [this Court] from the Opinion and Order of the United States District Court for the Eastern District of New York, entered in this action on the 29th day of January, 2018 ("January 29, 2018 Order").

(Notice of Appeal at 1.) The second and final paragraph of the Notice of Appeal stated as follows:

> The January 29, 2018 Order granted branches of *plaintiff's motion* pursuant to Rules 59(e) and 60(b) . . . which *sought reconsideration of the District Court's prior Opinion and Order dated May 30, 2017* ("the May 30, 2017 Order"). Upon reconsideration of its May 30, 2017 Order, which had granted a motion to dismiss pursuant to Rule 12(b)(6) by defendant TOWN OF OYSTER BAY ("TOBAY") and resulted in the entry of a final judgment in favor of defendant on June 2, 2017, the District Court vacated certain findings but otherwise adhered to its original determination of the May 30, 2017 Order. The District Court also denied the branches of plaintiff's motion seeking leave to file a second amended complaint and other relief pursuant to FRCP Rule 60(b)(2).

(Notice of Appeal at 1-2 (emphases added).) Despite the Notice of Appeal's statement that PHL had "sought reconsideration of the District Court's prior Opinion and Order dated May 30, 2017"—as if it had sought reconsideration of the entire May 2017 decision—PHL had in fact stated that "[r]econsideration *is not sought for* th[e] Court's dismissal of PHL's *claims sounding in unjust enrichment* (Count III) *or negligent misrepresentation* (Counts VI, VII, and XI), which were dismissed on grounds other than, or in addition to, those for which reconsideration is sought on this motion" (PHL Memorandum in support of reconsideration and for leave to file a second Amended Complaint at 2 n.1 (emphases added)). Accordingly, the district court's 2018 Order, after listing the claims PHL had asserted and stating that all had been dismissed in its May 30, 2017 original decision and the June 2, 2017 final judgment,

*see*, D.Ct. 2018 Order at 1, noted that PHL had moved for "reconsideration of *so much of the May Order as dismissed its breach of contract, fraud and innocent misrepresentation claims*," *id.* at 2 (emphasis added). The court's 2018 Order did not further mention the claims of unjust enrichment or negligent misrepresentation. It neither granted nor denied reconsideration of those causes of action, given that reconsideration of those claims was explicitly not requested.

While this case differs slightly from *Shrader*, in that the second paragraph of PHL's Notice of Appeal contained a mention of the May 30, 2017 Order and the final judgment, it did so only in stating that the district court's order on reconsideration vacated certain findings but otherwise adhered to its original determination. But neither the vacaturs nor the adherences involved the claims of unjust enrichment or negligent misrepresentation, for they were not at issue in the reconsideration motion.

PHL's Notice of Appeal could of course have, along with the reconsideration order, designated the final judgment—or the parts of it that dismissed the claims for unjust enrichment and negligent misrepresentation-—among the decisions appealed from if PHL wished those dismissals reviewed. But it did not do so; and as it had expressly eschewed reconsideration of those specific claims by the

22

district court, and its Notice of Appeal identified only the reconsideration order as the decision appealed from, nothing in the Notice of Appeal or in the events that preceded it suggested that PHL wished to challenge the dismissals of the claims for unjust enrichment and negligent misrepresentation in this Court.

The fact that the Town, in addition to raising this jurisdictional issue, fully briefed the unjust enrichment and negligent misrepresentation claims indicates that the Town was not prejudiced by the fact that the Notice of Appeal was limited. But it does not persuade us that the notice identified the final judgment or the dismissals of those claims for appeal.

We conclude that PHL's arguments with regard to dismissals of the unjust enrichment and negligent misrepresentation claims are not properly before us. That said, we note that if they were properly before us, we would reject PHL's arguments substantially for the reasons stated by the district court in dismissing those claims, as well as for reasons discussed below that are applicable both to those dismissals and to dismissals that are properly before us.

B. *The Merits of the Dismissal*

Whether a complaint states a claim on which relief can be granted is a question of law, *see*, *e.g.*, *Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012), *cert. denied*, 568 U.S. 1087 (2013); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996), which we consider *de novo*, *see*, *e.g.*, *Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 321 (2d Cir. 2010) ("*Starr*"), *cert. denied*, 562 U.S. 1168 (2011).

> In reviewing the sufficiency of a complaint, we accept only its factual allegations, and the reasonable inferences that can be drawn therefrom, as true. *See*, *e.g.*, *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). "[W]e 'are not bound to accept as true a legal conclusion couched as a factual allegation,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 . . . (2009) ("*Iqbal*") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 . . . (2007) ("*Twombly*")); nor are we required to accept as true allegations that are wholly conclusory, *see*, *e.g.*, *Iqbal*, 556 U.S. at 678-79, 681, 686 . . . .

*Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) ("*Krys*").

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 . . . (quoting *Twombly*, 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly*, 550 U.S.] at 556 . . . .

*Krys*, 749 F.3d at 128.

24

In assessing plausibility, we consider not only the complaint's factual allegations but also the documents attached. *See, e.g.*, Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

The Town Law of the State of New York, with respect to the "[a]ward . . . of town contracts," provides in pertinent part that a town "[m]ay award contracts for any of the purposes authorized by law . . . *after approval by the town board*." New York Town Law § 64(6) (McKinney 2005) (emphasis added). This provision has been in existence since 1932. *See id.* Similar preconditions to the allocation or expenditure of municipal moneys are imposed on other governmental subdivisions. *See, e.g.*, N.Y. County Law § 362(3) (McKinney 1952) ("No . . . contract which in any manner involves the expenditure of money or the incurring of any pecuniary liability, shall be made or entered . . . unless an amount has been appropriated . . . or has been authorized to be borrowed pursuant to the local finance law."); *id.* § 360(2) ("appropriation resolution" to be made by county's "board of supervisors"); N.Y. Village Law §§ 4-412(1) and 4-412(11) (McKinney 2018) ("*the board of trustees of a village shall have management of village property and finances*," and "may create . . . by resolution

25

offices, boards, agencies and commissions and delegate [to them] so much of its powers, duties and functions as it shall deem necessary for effectuating or administering the board of trustees duties and functions"; such an "officer, board or agency . . . *shall let all contracts for public work and all purchase contracts to the lowest responsible bidder after advertisement for bids where so required by section one hundred three of the general municipal law*" (emphases added)); *id.* § 4-400(1)(k) ("It shall be the responsibility of the mayor" of a village "to sign checks in the absence or inability of the treasurer or deputy treasurer, if any, *when authorized by the board of trustees by resolution*"). The purpose of such statutes is "to guard against extravagance and collusion on the part of public officials," *Corning v. Village of Laurel Hollow*, 48 N.Y.2d 348, 351-52, 422 N.Y.S.2d 932, 934 (1979), *i.e.*, "to protect the public from governmental misconduct or improvidence," *Parsa v. State*, 64 N.Y.2d 143, 147, 485 N.Y.S.2d 27, 29 (1984) ("*Parsa*"),

> to insure official care and deliberation, and to hold the agents of the public to personal responsibility for expenditure; and they are a limit upon the powers of the corporation, inasmuch as they prescribe an exact mode for the exercise of the power of expenditure.

*McDonald v. Mayor*, 68 N.Y. 23, 26-27 (1876) ("*McDonald*"). And they are stringently enforced.

"Municipal contracts which violate express statutory provisions are invalid." *Granada Buildings, Inc. v. City of Kingston*, 58 N.Y.2d 705, 708, 458 N.Y.S.2d 906, 907 (1982) ("*Granada*"); *see, e.g., New York Telephone Co. v. Town of North Hempstead*, 41 N.Y.2d 691, 691-92, 395 N.Y.S.2d 143, 146 (1977) ("*New York Telephone*") (where the defendant town attached lighting fixtures to the plaintiff telephone company's poles while unsuccessfully negotiating for the right to rent such space, and there was no indication "of the performance of any of the formal prerequisites to the execution of a valid contract on the part of the town," the telephone company, while entitled to an order requiring the town to remove the lights, had no right to recover rent); *Seif v. City of Long Beach*, 286 N.Y. 382, 385, 36 N.E.2d 630, 631 (1941) ("*Seif*") (reinstating judgment dismissing claim for the reasonable value of services rendered to the city by an attorney at the instance of the Mayor, because "[o]nly the City Council ha[d] power to . . . authorize the employment of special counsel to represent the city," and the City Council had not done so); *Lutzken v. City of Rochester*, 7 A.D.2d 498, 501, 184 N.Y.S.2d 483, 487 (4th Dep't 1959) ("It is established law in this State that where there is a lack of authority on the part of agents of a municipal corporation to create a liability, except by compliance with well-established regulations, *no liability can result unless the prescribed procedure is complied with and followed*." (emphasis added)); *Mans*

27

*Construction Oversite, Ltd. v. City of Peekskill*, 114 A.D.3d 911, 912, 980 N.Y.S.2d 822, 823 (2d Dep't 2014) ("*Mans*") ("A municipal contract which does not comply with statutory requirements or local law *is invalid and unenforceable*" (internal quotation marks omitted (emphasis ours)); *Verifacts Group, Inc. v. Town of Babylon*, 267 A.D.2d 379, 379 (2d Dep't 1999) ("Town Law § 64 (6) demands that a formal resolution be passed by the Town Board"—*approv[ing] the contract at issue*"—before a Town can be bound by [the] contract. Absent strict compliance with the formal requirements of this statute, *no valid contract binding a Town may be found to exist*." (emphases added)); *see also Parsa*, 64 N.Y.2d at 147, 485 N.Y.S.2d at 29 (where the "Legislature ha[d] specified that contracts exceeding $5,000 shall not be effective unless first approved by the State Comptroller," and the plaintiff's $145,000 contract was "no[t] approved by the Comptroller, the plaintiff may not maintain an action on it").

Moreover, except in very limited circumstances that are not present here, if the express statutory constraints have not been complied with, the plaintiff cannot recover on a theory of implied contract.

> Even though a promise to pay may be spelled out from the parties' conduct, a contract between them may not be implied to provide "rough justice" and fasten liability on the State when applicable statutes expressly prohibit it (see *Lutzken v. City of Rochester*, 7 A.D.2d 498, 184 N.Y.S.2d 483).

*Parsa*, 64 N.Y.2d at 147, 485 N.Y.S.2d at 29.

28

"*Where the Legislature provides that valid contracts may be made only by specified officers or boards and in specified manner, no implied contract* to pay for benefits furnished by a person under an agreement which is invalid because it fails to comply with statutory restrictions and inhibitions *can create an obligation or liability of the city*."

*New York Telephone*, 41 N.Y.2d at 696, 395 N.Y.S.2d at 146 (quoting *Seif*, 286 N.Y. at 387, 36 N.E.2d at 632 (emphases ours)).

The creation of an obligation against the town, by way of contract, *cannot be founded upon omission of action by the town officials*, but must be the result of an affirmative determination to create the obligation in the form and manner provided by statute.

*New York Telephone*, 41 N.Y.2d at 696, 395 N.Y.S.2d at 146 (internal quotation marks omitted (emphasis in *New York Telephone*)); *see, e.g.*, *McDonald*, 68 N.Y. at 28 (where "there is an express legislative inhibition upon the city, that it may not incur liability unless by writing and by record[, *h]ow can it be said that a municipality is liable upon an implied promise, when the very statute which . . . prescribes the mode of the exercise of [its powers], says, that it shall not, and hence cannot, become liable, save by express promise*? . . . [A]s we have already said, . . . *if the charter imposes restrictions upon the manner of contracting, they must be observed*." (emphases added)).

Nor, when the statutory prerequisites have not been met, can the municipality be held liable on a theory of unjust enrichment or estoppel, *see, e.g.*,

29

*Granada*, 58 N.Y.2d at 708, 458 N.Y.S.2d at 907 ("we have frequently reiterated that estoppel is unavailable against a public agency"); *Mans*, 114 A.D.3d at 912, 980 N.Y.S.2d at 823 ("The mere acceptance of benefits does not estop the municipality from denying liability for payment for services rendered, where a contract was neither validly entered into nor ratified [citing *Parsa* and *Seif*]"); *Seif*, 286 N.Y. at 387-388 ("this court has given emphatic warning that equitable powers of the courts may not be invoked to sanction disregard of statutory safeguards and restrictions").

PHL's reliance on *Aniero Concrete Co. v. New York City Construction Authority*, 94-cv-3506, 2000 WL 863208 (S.D.N.Y. 2000) ("*Aniero*"), *Vrooman v. Village of Middleville*, 91 A.D.2d 833, 458 N.Y.S.2d 424 (4th Dep't 1982) ("*Vrooman*"), and *Gerzof v. Sweeney*, 22 N.Y.2d 297, 292 N.Y.S.2d 640 (2013) ("*Gerzof*"), in urging us to deviate from the above general principles in order to allow PHL to enforce the invalid SACA, is misplaced, for none of the circumstances of those cases are even remotely similar to those here. In *Aniero*, a private company was taking over for another party midstream in an ongoing municipal contract that had been properly approved. *See* 2000 WL 863208, at *1. In *Vrooman*, the village similarly was not free to elect not to contract for the services in question, for although it had not made the statutorily required appropriation to fund the work performed by the plaintiff, it in fact had no

30

choice but to have the work performed because it had been ordered by the State to have it done. *See* 91 A.D.2d at 834-35, 458 N.Y.S.2d at 426. And in *Gerzof*, the village's governing body had collaborated with a manufacturer on "unlawful manipulation[s] in preparing and submitting . . . specifications," thus rendering the contract illegal, 22 N.Y.2d at 303, 292 N.Y.S.2d at 643 (internal quotation marks omitted), and the village had thereby acquired an expensive generator in circumvention of statutory provisions that required competitive bidding and an award to the low bidder, *see id.* at 302, 292 N.Y.S.2d at 642. In the present case, the Town and SRB had an ongoing contractual relationship; the Town had no obligation, contractual or regulatory, to assist SRB in obtaining financing; and there is no plausible suggestion that the Town received in the SACA anything more than what it was already entitled to from SRB under contracts previously approved by Board resolutions: The Amended Complaint alleges that the improvements for which SRB sought financing were "the improvements required by the terms of [the 2008 Agreement]" (Amended Complaint ¶ 22).

PHL, on the other hand, sought a benefit in the form of the Town's guarantee of SRB's loan, which was in no way required, and which may well have been constitutionally prohibited, *see* N.Y. State Const. Art. VIII. § 1 (prohibiting a

31

town from "giv[ing] or loan[ing] its credit to or in aid of any individual, or public or private corporation or association, or private undertaking"). And PHL's devised "vehicle"—to get around the likely constitutional prohibition—reversed the Town's fortunes by imposing a new and unfathomable obligation whereby if the Town terminated the Concession Agreement because SRB—even if still making loan payments to PHL—failed to make concession payments to the Town, the Town would be required to make payments to PHL.

Thus, PHL's pleading does not suggest any plausible justification for deviating from the general principle that a municipal contract entered into without compliance with the statutory requirements is unenforceable. The strict prerequisites are imposed not only to "insure official care and deliberation, and limit . . . the powers of the corporation," *McDonald*, 68 N.Y. at 26-27, but also to impose "*a restraint . . . upon other persons as well. They put upon all who would deal with the city, the need of first looking for the authority of the agent with whom they bargain*," *id.* (emphases added). Thus, "[i]t is fundamental, that those seeking to deal with a municipal corporation through its officials, must take great care to learn the nature and extent of their power and authority." *Id.*

32

> A party contracting with a municipality is chargeable with knowledge of the statutes which regulate its contracting powers and is bound by them (see *Parsa v State of New York*, 64 NY2d 143, 147 [1984]).

*Mans*, 114 A.D.3d at 912, 980 N.Y.S.2d at 823. New York law thus "place[s] the risk of loss on parties dealing with municipal corporations," *City of Zanesville v. Mohawk Data Sciences Corp.*, 97 A.D.2d 64, 66, 468 N.Y.S.2d 271, 273 (4th Dep't 1983) ("*Zanesville*"):

> Those dealing with officers or agents of municipal corporations . . . have no right to presume that the persons with whom they are dealing are acting within the line of their authority *(McDonald v Mayor of City of N.Y.*, 68 NY 23, 27). *Since the authority of such officers and agents is a matter of public record, there is a conclusive presumption that persons dealing with them know the extent of their authority.*

*Zanesville*, 97 A.D.2d at 66, 468 N.Y.S.2d at 273 (emphasis added). "Although application of this rule results in occasional hardship," it is appropriate that "*the loss should be ascribed to the negligence of the person who failed to ascertain the authority vested in the public agency with whom he dealt and statutes designed to protect the public should not be annulled for his benefit*." *Id.* at 67, 468 N.Y.S.2d at 273 (internal quotation marks omitted) (emphases ours).

> Common sense dictates this course of action since statutory requirements could otherwise be nullified at the will of public

officials to the detriment of the taxpaying public, and funds derived from public taxation could be subjected to waste and dissipation.

*Id.*

The result may seem unjust but any other rule would completely frustrate statutes designed to protect the public from governmental misconduct or improvidence. *The contractor's option is to withhold his services unless an agreement is executed and approved as the statutes require.*

*Parsa*, 64 N.Y.2d at 147, 485 N.Y.S.2d at 29 (emphasis added).

In light of these long-established principles, as recognized by the district court, PHL's Amended Complaint failed to state a claim on which relief can be granted for breach of contract or equitable relief because it failed to allege plausibly that the SACA, of which PHL claims to be a third-party beneficiary, was approved by the Town Board. It failed as a matter of law to allege a valid contract.

Although PHL contends that the district court overlooked allegations of the Amended Complaint that PHL argues were sufficient to show that there had been Board approval of the SACA, we see no such plausible allegations. There is no direct allegation of a Board resolution approving the SACA. Nor is there any plausible suggestion that the SACA was approved in 2010 by Resolution No. 256-2010 or Resolution No. 605-2010, which were adopted some 20 and 17 months, respectively, before the November 2011 SACA. The former authorized and directed the Town

34

Supervisor to enter into agreements *with SRB* regarding *the use* of loan proceeds for improvements at the Facilities "*subject to the negotiation of acceptable terms* in said agreements," Town Resolution No. 256-2010 (emphasis added); the latter authorized the Town Supervisor to execute amendments to the three prior SRB contracts "in order to facilitate the concessionaires' [*sic*] ability *to obtain financing to make capital improvements to the facilities*," Town Resolution No. 605-2010 (emphasis added); neither of these 2010 resolutions mentioned the then-nonexistent SACA, involving a then-unknown lender, and unknown terms.

Further, PHL's argument that it "alleged . . . an enforceable contract" (PHL brief on appeal at 30) because the Amended Complaint alleged there was "[p]roper authorization by [the Town] for execution of . . . amendments" to the Concession Agreement (*id*. at 31), is meritless since that allegation is entirely conclusory. Nor is the plausibility of Board approval indicated by the statements in the SACA or in the opinion letters PHL received from the Town's attorneys that the SACA had been "duly authorized by all necessary action" and that the SACA was a "valid binding obligation" of the Town (Amended Complaint page 13, ¶ 38; *id.* page 15, ¶ 38). The representation that a document constitutes a "valid binding obligation" is a legal opinion rather than a statement of fact. The assertion that a proposed

35

agreement has been "duly authorized by all necessary action" is, given the word "duly," similarly a legal opinion; and with or without that adverb, it is entirely conclusory, devoid of any statement of fact. In assessing the sufficiency of a complaint to state a claim, we are not required to accept such legal and/or conclusory allegations as true.

Finally, the SACA itself and each of the opinion letters on which PHL relies—all of which are exhibits attached to the Amended Complaint—raised a red flag as to the fact that there had not been a Board resolution approving the SACA. The first three "WHEREAS" clauses of the SACA itself recited that the prior three agreements between the Town and SRB had been authorized by specifically identified Town Board resolutions: the October 30, 2000 "Concession agreement" "by Resolution No. 638-2000 adopted on October 3, 2000," the 2005 Amendment "by Resolution No. 313-2005, adopted on April 19, 2005," and the 2008 Agreement "by Resolution No. 889-2008, adopted on September 16, 2008." (Amended Complaint Exhibit F, at 1.) And the opinion letters attached to the Amended Complaint likewise recited that the Concession Agreement, the 2005 Amendment, and the 2008 Agreement had been authorized by those specifically identified Town Board resolutions (*see* Amended Complaint Exhibits I and K). The fact that all three of these documents, sent to PHL

36

in direct response to its request for information as to the SACA, were so explicit with respect to Board resolutions authorizing the contracts between the Town and SRB in earlier years and yet contained no statement of fact as to any Board resolution with respect to the SACA in 2011, strongly indicated that there was no SACA-authorizing resolution that could be cited, and thus negates PHL's contention that the Amended Complaint plausibly alleged Board authorization for the SACA.

These features of the Amended Complaint and its exhibits also warranted dismissal of PHL's claims for misrepresentation. In order to state a claim under New York law for any level of actionable misrepresentation, a plaintiff must allege, *inter alia*, that it reasonably or justifiably relied on the misrepresentation. *See*, *e.g.*, *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d. Cir 2012) (reasonable reliance for negligent misrepresentation); *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 31 N.Y.3d 569, 584, 81 N.Y.S.3d 816, 826 (2018) (justifiable reliance for fraud); *West Side Federal Savings & Loan Ass'n of New York City v. Hirschfeld*, 101 A.D.2d 380, 385, 476 N.Y.S.2d 292, 295 (1st Dep't 1984) (same for innocent misrepresentation); *see also Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235 (2d Cir. 2006) (New York courts are "particularly disinclined to entertain claims of justifiable reliance" where the

plaintiff is a sophisticated party such as "businessmen engaged in major transactions" (internal quotations omitted)).

PHL, in negotiating for a contract that would entitle it to moneys from the Town, is presumed to have known that, by law, for such an agreement by the Town to be valid, it would need authorization by the Board. And, in that effort, PHL was represented by counsel. (*See* Amended Complaint ¶ 28.) Given that when PHL requested information as to the SACA, it received documents that meticulously cited Board authorizations for prior SRB contracts but that made no mention of Board action with respect to the SACA, and that suggested the existence of SACA authorization only in conclusory terms, the Amended Complaint failed to assert any plausible claims for misrepresentation.

C. *The Denial of Leave To Amend*

Finally, we see no merit in PHL's contention that it should have been allowed to file a second amended complaint to allege, principally, a 2014 Board ratification of the SACA. Denial of a motion for leave to file an amended pleading is reviewed for abuse of discretion, *see, e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Starr*, 592 F.3d at 321, and we see no such abuse here. The proffered 2014 resolution

38

relied on by PHL—while making reference to the resolutions adopted with respect to the 2000 Concession Agreement, the 2005 Amendment, and the 2008 Agreement—did not, as the district court noted, either mention the SACA or provide any indication that the Board even had knowledge of the SACA. We see no abuse of discretion in the denial of leave to amend.

## CONCLUSION

We have considered all of PHL's arguments on this appeal and have found them to be without merit. The order of the district court is affirmed.